AYRES, Judge.
In this action plaintiff seeks to recover workmen’s compensation at the maximum statutory rate prescribed for total and permanent disability.
Plaintiff sustained severe accidental injuries February 17, 1965, when he fell from a scaffold while performing services as a carpenter on a highway construction project. He was paid compensation for a period of nine weeks, that is, until April 19, 1965, when he returned to his employment. His employment was, however, terminated November 26, 1965, for lack of work.
The defense urged was that plaintiff had completely recovered from his injuries *98 and was fully able to perform all the duties of his occupation as a carpenter.
After trial, plaintiff was awarded 25 weeks additional compensation and, from this judgment, he appealed. The defendant answered the appeal, contending that the evidence failed to support any award.
The issue presented is a factual question and relates to the extent and duration of plaintiff’s disability. Following the accident plaintiff was hospitalized for a period of 12 days under the care and treatment of Dr. Frederick L. Price, who diagnosed his condition as consisting of a laceration and contusion of the right elbow and hip, a contusion of the right kidney with hema-turia, or bleeding in the urine, contusion of the anterior chest, and acute cervical and lumbosacral strain. X-ray examinations subsequently disclosed plaintiff had sustained a slight fracture to the sternum. After consultation with plaintiff on April 16, 1965, Dr. Price expressed an opinion that plaintiff was making such rapid progress toward recovery that he was able to resume light employment, and that in approximately three weeks, or, at the most, within six weeks, he should be able to perform all the duties of his employment. This opinion was confirmed by subsequent examinations extending from April to November.
Because of continued complaints, Dr. Price referred plaintiff to Dr. Willis J. Taylor, an orthopedist, for examination and evaluation. Dr. Taylor first saw plaintiff June 21, 1965, when it was noted he had undergone arthritic changes in his dorsal spine, with narrowing of the inter-space between the fifth and sixth cervical vertebrae, and with calcific deposits in the interspace between the sixth and seventh vertebrae. The chest pain of which plaintiff complained was attributable to the sternal fracture, which had almost healed, and to a temporary aggravation of a preexisting arthritic condition. The belief was expressed that plaintiff’s symptoms would gradually disappear and that he should be asymptomatic in another two to four months. No permanent disability was anticipated. This opinion was confirmed by a later examination of November 22, 1965, as a result of which it was concluded plaintiff was fully able to resume and perform the work of his former employment. This conclusion was again confirmed by an examination of March 18, 1966.
On January 14, 1966, prior to the institution of this action on March 7, 1966, plaintiff was referred by his counsel to Dr. C. E. Boyd for examination. Dr. Boyd’s report reflected, primarily because of a rheumatoid arthritic condition, plaintiff would be unable to engage in hard manual labor for approximately three months. The report did not suggest the onset of plaintiff’s arthritic condition, that is, whether it was of old or recent origin, nor, if it preexisted the accident, whether such condition was aggravated by the accident. Reexamination and reevaluation of plaintiff’s condition were suggested at the end of the three-month period. However, plaintiff did not comply with the suggestion to return for the reexamination and reevaluation.
The medical experts were generally in accord on the proposition that, if the accident had aggravated a prior arthritic condition, the aggravation was only temporary in character.
Plaintiff assigns as error, first, the action of the court in not concluding that he is totally and permanently disabled because of a small right inguinal hernia found by Dr. Boyd during his examination, and, second, in not considering the lay witnesses’ testimony to the effect that he is unable to work.
Relative to the first of these assignments, it may be pointed out Dr. Boyd’s report reflects that at the time he examined plaintiff, approximately 11 months after the accident, he discovered a very small hernia, or what may be more properly re *99 ferred to as a potential inguinal hernia. The hernia was asymptomatic; in fact, plaintiff was not aware of its existence. The doctor acknowledged that he had no way of knowing whether this condition preexisted -the accident, noting, “It is questionable whether the injury caused this or not.” Any attempt to relate this hernia to the accident would necessarily be predicated. ,upon pure conjecture and speculation. The burden is upon plaintiff to establish that the accident caused the hernia; the record contains no basis for such a conclusion.
As for the lay testimony, this court is not impressed, even if it were conceded the testimony was admissible, it would be entitled to the weight counsel would have us give it.
Plaintiff initially returned to work, admittedly of a light nature, April 19, 1965, and worked steadily thereafter until laid off November 26, 1965. Thus, for a period of approximately seven months, plaintiff performed carpentry work, worked carpenters’ hours, and was paid full carpenters’ wages. Of three lay witnesses called by plaintiff — J. C. Watson, Arthur L. Lyles, and Thomas H. Vincent — only the latter observed him at work following the accident; the other two had no opportunity to, nor did they, observe plaintiff perform any kind of work or engage in any physical activity. A fourth lay witness, a fellow carpenter on a church construction job in Bossier City, testified that he recalled observing plaintiff installing door jams. Plaintiff, however, testified that in addition to the door-jam work he performed numerous other activities such as setting forms for concrete sidewalks and curbs, described by his fellow employee as coming within the category of heavy carpentry work. The variety and diversity of duties performed by plaintiff over a period of months was characterized by him as regular carpentry work.
A supervisor of plaintiff’s work for approximately two days in November pointed out that the work performed under his supervision was that of a carpenter and was in no wise different from work assigned to and performed by other carpenters on the same job. The supervisor gave the additional testimony that plaintiff did not appear to experience any difficulty in performing his duties; nor did he make mention of it. A fifth fellow employee with whom plaintiff worked for a week immediately prior to his layoff testified that plaintiff performed the same work as done by other carpenters, that he did not refuse to do any work assigned him, that he did as much work as other carpenters on the job, and that he completed all the work assigned him in a satisfactory manner. The work done was characterized by the witness as general carpentry work. It was stipulated that another coemployee would, if called as a witness, give testimony to this same general effect. Except from plaintiff himself, there was no testimony that he was unable, whether by reason of pain or any other cause, to perform any of the usual duties of a carpenter.
Defendant urges the applicability of a well-established rule with reference to the weight to be accorded testimony of medical experts. In this regard, defendant submits that the testimony of Drs. Price and Taylor, on the one hand, who found that plaintiff had completely recovered long prior to the termination of his employment in November, 1965, and was fully capable of performing all the duties of his employment, should be accorded greater weight than that of Dr. Boyd who examined plaintiff for evaluation purposes. Dr. Price, as heretofore noted, was the treating physician who had the benefit of repeated examinations and frequent observations of plaintiff. Plaintiff’s injuries came within the specialty of Dr. Taylor, as an orthopedist.
The principle is well established that the testimony of a treating physician who has had the benefit of repeated examinations and sustained observation of the *100 plaintiff under his direct care and treatment should be accorded greater weight and probative value than that of a physician who examined him merely for evaluation purposes, and the testimony of a specialist in a particular field of medicine should be accorded greater weight than that of a nonspecialist in such field. Thus, as stated in Matherne v. Wheless Drilling Company, 174 So.2d 921, 922 (La.App., 4th Cir. 1965):
“It is well settled that in workmen compensation cases the testimony of a treating physician is to be preferred over that of one who merely examined the plaintiff; that the testimony of the physician who examined an injured employee immediately following the accident is to be preferred over a physician who has examined him subsequently; and that the specialist is preferred to the general practitioner regarding matters which fall in his field of specialization.”
See, also: Hall v. Liberty Mutual Insurance Company, 153 So.2d 553 (La.App., 1st Cir. 1963); Butler v. American Insurance Company, 138 So.2d 862, 865 (La.App., 4th Cir. 1962).
In applying these rules, which we are enjoined to do in situations as presented here, we are constrained to hold that plaintiff had completely recovered and was fully able to perform the duties of his employment prior to the time of the cessation of the employee-employer relationship between plaintiff and his employer in November, 1965.
Moreover, the rule is likewise well established that it is incumbent upon a claimant in a workmen’s compensation matter, as it is upon a plaintiff in any other civil action, to establish his claim by a clear preponderance of evidence and to a legal certainty. A review of the record leaves no doubt as to plaintiff’s failure in this respect.
For the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set aside; and
It is accordingly ordered that plaintiff's demands be, and they are hereby, rejected at his costs.
Reversed.