REID, Judge.
This action for workmen’s compensation benefits was brought by Troy S. Powell against his employer, Patterson Truck Lines, Inc. and his employer’s workmen’s compensation insurer, The Aetna Casualty and Surety Company, seeking total and permanent disability for injuries allegedly growing out of an accident which occurred in the course of plaintiff’s employment.
Plaintiff’s petition alleges that on June 6, 1966, while he was employed by Patterson Truck Lines, Inc., his back and left knee and ankle were injured in an automobile accident which occurred near La-Rose, Louisiana, and that as a result of said accident and injuries he has been rendered totally and permanently disabled from performing the duties of his occupation, or any other occupation reasonably similar thereto. He further alleges receiving compensation payments from the date of injury to July 22, 1966, at which time he said the payments were discontinued without good cause. He prays for judgment for $35.00 per week for a period of 400 weeks, with legal interest, medical expenses, attorney’s fees, and penalties.
The defendants filed an answer admitting that a slight accident happened, that compensation payments were paid up until July 22, 1966, when they were terminated, admit that the Aetna Casualty and Surety Company was the compensation carrier of defendant, Patterson Truck Lines, Inc., and deny all the remaining allegations of plaintiff’s petition, and especially that they are liable for any further compensation at all.
The matter was duly tried on the merits and the trial Court, for written reasons assigned, rendered and signed judgment in favor of the defendants and against the plaintiff, rejecting plaintiff’s claim at his cost. From this judgment plaintiff has prosecuted a devolutive appeal to this Court.
The issue in this case is mainly one of fact. There is no question but what the plaintiff was injured while acting in the scope of his employment and that his employment was hazardous and came under the provisions of the Workmen’s Compensation Act. It is equally true that he received his compensation up until July 22, 1966, at which time he returned to work and continued working until his services for the Patterson Truck Lines were voluntarily terminated by him.
The trial Judge rendered a very excellent analysis and statement of the facts as found by him, which we have taken the liberty of copying and incorporating a portion of the same as our own, as follows, to-wit:
“Plaintiff started working with Patterson Truck Line, Inc. in December of 1965 *256 as a truck driver. He had a preemployment examination by Dr. W. A. Marmande, who found him fit for duty. On June 6th, 1966, plaintiff had an accident with his truck turning it over on a Bayou La-fourche road and approximately one hour and a half after the accident was seen by Dr. William George at Our Lady of the Sea Hospital on Bayou Lafourche. X-rays of the lumbosacral spine and left knee were negative. Dr. George found very little, if anything, physically wrong with plaintiff and suggested that he go home and consult his family physician. On June 13th, 1966, plaintiff visited his family physician, Dr. Saul Landry, Jr., who thoroughly examined plaintiff and diagnosed his injuries as a hematoma, a contusion of the left thigh, left ankle and lower back. Dr. Landry treated plaintiff until July 23rd, 1966 on which date he discharged the plaintiff as completely cured and able to return to work. On that same day compensation benefits were terminated.
“The plaintiff claims the termination of these benefits at this time was without justification.
“Mr. Powell returned to work for Patterson Truck Lines on July 25th, 1966. He went back to regular duty. He claims that he was ‘carried! by some of his fellow employees. There is nothing in the record to justify this conclusion. One of his co-employees stated that at one time he did hear Powell complain of having some trouble. This witness also stated that he helped Powell do some of his work. However, the fellow employee explained that in the trucking business, when there is a fleet of trucks delivering a rig or different materials, that the truck drivers always help each other. This fellow employee who testified for plaintiff explained that he was a much taller and stronger man than Powell and that he could reach on top of the truck load and could pull on the binders which hold down the load much more easily than could Powell. This was an assist to Powell as a fellow truck driver, not because of Powell’s physical disability.
“Powell continued to work with Patterson Truck Lines until October 10th, 1966, when he decided that his truck was not loaded properly. He was told by a superior to either proceed with the truck or his employment would be terminated. In the opinion of Patterson Truck Lines the truck was properly loaded. Mr. Powell abandoned his truck at a location undesignated by his superiors and called home for someone to come and get him. This termination was unrelated to his accident.
“Powell then went to work for J. T. Truck Line where he worked for about two months. Then he went to work for Bourg Truck Line for about a week. He then worked for the Flash Truck Line for approximately two months. During this long period of employment with various truck lines as a full-fledged truck driver performing the same duties that he performed prior to his accident complained of, not one time did Powell complain to any of the management of any of these truck lines concerning his alleged injury. Other than his one conversation with one truck driver of Patterson to the effect that he was still hurting, this record is void of any testimony supporting plaintiff’s claim of severe pain while working as a truck driver after the accident.
“Plaintiff filed the present suit on July 20th, 1967. The Court mentions this because of certain events. On February 15th, 1967, plaintiff visited Dr. Landry in reference to an infected jaw. While there he casually mentioned his knee. The doctor examined the knee but did not find the complaint of such a serious nature as to warrant treatment.
“In May, 1967, Mr. Powell sought employment with Jefferson Truck Line. This is shortly before his suit was filed. He was examined by Dr. Roy St. Martin on behalf of Jefferson Truck Line. Powell explained his disabilities and injuries to *257 Dr. St. Martin and, of course, Dr. St. Martin then thoroughly examined plaintiff. He found a slight swelling in the knee. He promptly turned Powell down for employment.
“Dr. G. Gernon Brown of New Orleans examined the plaintiff on three occasions— June 12th, August 28th and September 18th, 1967. In the first examination, Dr. Brown found a pre-existing developmental defect of the spine and also found a defect in the left knee. The report of Dr. Brown is found annexed to Dr. Brown’s deposition filed in the record. The report shows a finding of clinical evidence of a chondro-malacia of the left patella. The doctor was looking for a tearing of the meniscus. He did not find such a tear. He was asked directly under cross-examination if this was not the purpose of his examination. He said yes. The doctor also stated that later on when he examined plaintiff on August 28th, 1967, he did recommend arthrotomy of the left knee and excision of the medial meniscus of the left knee. He states that this condition can be caused by a simple twisting of the knee and even by just stepping off a curb. The doctor also stated that with such a condition, a person could do his work and quite satisfactorily but with some difficulty. Athletes, even professional football players, perform quite well with such injuries. This is in the deposition. Dr. Brown did conclude, however, that Mr. Powell would have some difficulty in operating a truck. He stated that the underlying problem in Powell’s knee was the tear of the meniscus and not the presence of the chondromalacia. It is to be noted that the tear of the meniscus was not present in his first examination.
“In the latter part of 1967 Powell got a j ob with the Yellow Cab Company. He told his employer, Mrs. Marcel, that he wanted an automobile without a clutch. He got one. He also told her that he did not want to deliver parcels to and from the telephone company. He was relieved of this duty.
“On January 21st, 1968, Powell was in his Yellow Cab and was in a rather rigid condition apparently unable to remove himself from the vehicle. He was taken to the Terrebonne General Hospital from which he was discharged on February 2nd, 1968. During this hospitalization, he had no complaints about his knee. Dr. Landry called in Dr. Robert Bateman, a specialist in orthopedic surgery, of Houma. Dr. Landry testified that he saw Powell later and strongly recommended that he either see Dr. Brown or Dr. Bateman about his back. If Powell took Dr. Landry’s advice, it is not in the record. On February 23rd, 1968, Dr. Landry saw Powell again. Powell was feeling well and wanted to go back to driving again. Dr. Landry advised against all night driving.
“Dr. Robert Bateman, the orthopedist, attended plaintiff during his Terrebonne General Hospital confinement in January of 1968. He was subpoenaed to appear in Court. There was never any attempt to put Dr. Bateman on the stand. The Court believes that Dr. Bateman’s testimony would have been detrimental to the plaintiff, otherwise he would have used him to bolster his case.
“When questioned concerning the condition of Powell about the January, 1968 hospital visit, Dr. Landry stated that his condition was brought about by a combination of Powell’s bath tub episode the night before he was taken to Terrebonne General, combined with his sitting in a cab and driving all night.
“When Dr. Landry first described what caused Powell to go to the hospital in January of 1968, he stated that Powell told him that he, Powell, had fallen in the bath tub the night before and hurt himself. Under a compelling examination by plaintiff’s counsel, Dr. Landry softened this testimony somewhat by agreeing that the notes in his file were not worded exactly in that manner. The Court, however, believes that Dr. Landry had some justifica *258 tion in saying what he did about Powell falling in the bath tub because Mr. Powell’s boss, Mrs. Marcel who operates the Yellow Cab Company, took the witness stand on behalf of Powell. She clearly remembered Powell going to the hospital and why he went. Mrs. Marcel stated that When Powell reported to work, he told her that he had had an accident in his bath tub and had hurt himself.
“There is no doubt in the mind of the Court that if plaintiff is presently suffering with any injury, it was caused by his bath tub accident on January 20th, 1968.
“This Court does not believe Mr. Powell. He is grossly exaggerating. While we all have slight annoyances and pain from time to time that do not disable us, this Court does not believe that Powell could have continued his regular line of work from truck line to truck line as long as he did without letting some of his superiors know that he was having trouble and without having some medical attention and advice. The record is clear that Patterson Truck Lines considered the plaintiff one of its valued employees and if he had complained, it is the opinion of the Court that he would have been properly taken care of. It is the opinion of the Court that he did not complain because he had no real complaint.”
The appellant is relying on the law of Louisiana which states that claimant will not be deprived of compensation because he is physically able to perform tasks, when to do so he must suffer substantial pain and discomfort, but the pain must be sufficiently intense to either prevent the workman from carrying out some functions or to be deleterious to his health or increase hazards to his fellow workmen. See Flowers v. E. M. Toussel Oil Co., La.App., 190 So.2d 147 (1960); Hebert v. Your Food Processing & Warehouse, Inc., 248 La. 197, 177 So.2d 286 (1965); Veillion v. Knapp and East, La.App., 158 So.2d 336 (1963); Andrus v. Great American Insurance Company, La.App., 161 So.2d 109 (1964); Goetz v. Marquette Casualty Company, La.App., 165 So.2d 603 (1964); Cain v. Wilson Warehouse Co., La.App., 193 So.2d 97 (1966); and Duncan v. Carlo Ditta, Inc., La.App., 206 So.2d 140 (1968).
There is no question but what this is the law of Louisiana, but under the finding of fact by the trial Judge, which we have concurred herein, the plaintiff-appellant did not suffer any pain while doing his work and in fact carried out the functions of an oil field truck driver for approximately a year and a half or longer after his accident. We do not feel that this would entitle him to the benefits of workmen’s compensation.
The defendants rely on the legal proposion that plaintiff had failed to carry the burden of proof and to prove his claim by reasonable preponderance of the evidence and to a legal certainty.
While the law of Louisiana favors the liberal interpretation of the benefits of the Workmen’s Compensation Act in favor of the laborer, it still upholds the principle of law that the plaintiff in a workmen’s compensation suit, as in all suits, is required to prove his claim by a fair preponderance of the evidence and to a legal certainty.
“Our settled law is that the plaintiff in a compensation case must establish his claim to a legal certainty and by a reasonable preponderance of the evidence. Williams v. New Orleans Paper Box Company, La.App., 185 So.2d 109 and cases cited therein.” Price v. Walgreen’s Company, La.App., 204 So.2d 67.
See also Adams v. Home Indemnity Company, La.App., 203 So.2d 103; Ashby v. National Surety Corp., La.App., 203 So.2d 96; Griffin v. Employers’ Liability Ins. Co., La.App., 186 So.2d 349.
The trial Judge found that plaintiff failed to prove his case by a prepon *259 derance of the evidence and in this finding we find no manifest error or abuse of discretion.
For these reasons the judgment of the lower Court is affirmed at the cost of appellant.
Affirmed.