DOMENGEAUX, Judge.
Lee B. Chapman plaintiff, was injured on January 14, 1969, while engaged in loading segments of pipe on a truck, when a large piece of pipe struck his left ankle.
It was stipulated by and between counsel that plaintiff’s injury occurred in the course and scope of his employment with Big Moose Oil Field Truck Service, Inc.; that defendant, Travelers Insurance Company, was the workmen’s compensation insurer of Big Moose Oil Field Truck Service, Inc.; that plaintiff’s rate of compensation was $45.00 per week and that this sum was paid to plaintiff by defendant from January 15, 1969 through June 25, 1969, a period of 22 weeks and totaling $990.00; that plaintiff received $12.50 per week from June 25, 1969 to November 12, 1969, a period of 20 weeks totaling $250.00, and that on March 31, 1970 defendant paid plaintiff the sum of $200.42, in payment of corrected compensation benefits for the period of June 25, 1969 to August 6, 1969, based on a report by plaintiff’s physician to the effect that plaintiff had been discharged from further treatment on August 6, 1969, that defendant paid medical expenses for plaintiff in the sum of $1,239.-57; and that compensation payments were terminated on November 12, 1969.
Plaintiff filed suit on September 30, 1969 alleging total, permanent disability and demanding penalties and attorney’s fees under an allegation of arbitrary failure on the part of defendant to pay the workmen’s compensation benefits due him. In due course the trial court found the plaintiff to be totally and permanently disabled, and rendered judgment awarding plaintiff workmen’s compensation payments, of $45.00 per week, subject to a credit for compensation already paid him, beginning on January 15, 1969 and continuing during *250 plaintiff’s disability but not to exceed 500 weeks, with interest, and denying his claim for penalties and attorney’s fees. Defendant appealed that judgment to this court alleging that the trial court erred in finding that the plaintiff was totally and permanently disabled under the Louisiana Workmen’s Compensation Act. Plaintiff answered the appeal praying for penalties and attorney’s fees.
The evidence shows that although plaintiff’s usual occupation is that of a truck driver, at the time of the accident he was working as a swamper (truck driver’s helper) due to the fact that his employer had no truck available for him to drive. It was also shown, however, that in the oil business, a significant portion of a truck driver’s time is spent in performing the duties of a swamper, i. e. the loading and unloading of trucks, and that this is the sort of trucking that plaintiff was involved in. This, together with the fact that plaintiff was paid at the same rate of compensation, $2.00 per hour, when he was driving a truck or swamping, makes it irrelevant whether he is classified as a truck driver or as a swamper, and we therefore need not make the distinction.
Immediately following his injury plaintiff was taken to Lake Charles Memorial Hospital where he was examined by Dr. Edward W. Phillips, Jr., an orthopedic surgeon. Dr. Phillips testified that x-ray examination revealed a bimalleolar fracture, that is, fractures of both the medial mal-leolus and the lateral malleolus, and a dislocation of the talus. These bones are the ones that hold the foot and ankle in place. To correct this condition, an operation involving the insertion of two screws was required, and performed with reasonable success. Following the operation plaintiff spent six weeks to two months in an immobilizing cast and underwent surgery a second time for the removal of one of the screws. The second screw was left in place and need not be removed. On June 4, 1969 plaintiff was allowed to do light work, and by August 6, 1969 Dr. Phillips released him to return to his previous work as having reached maximum improvement. He felt however, that the plaintiff was left with a fifteen percent permanent disability of the left ankle. The doctor expected plaintiff to have swelling of the ankle accompanied by pain for an indefinite period, especially after heavy work, long standing, or walking on uneven surfaces. He further refused to say that the condition would ever improve much because of the involvement of the ankle joint.
Plaintiff was also seen by Dr. Norman P. Morin, also an orthopedic surgeon, on October 21, 1969 and again on April 6, 1970. On the first of these visits the doctor obtained a history from the plaintiff in which he complained of pain in his ankle at times during the day and at all times in the late evening. His objective findings including a left-sided limp, difficulty in walking on his heels and toes, tenderness on palpation and about one-half inch of swelling about the left ankle. It was Dr. Morin’s opinion that the objective findings and history justified the plaintiff’s complaints and that at that time plaintiff was unable to function as a swamper. On the second visit the doctor found little improvement. He concluded that as a result of his injury the plaintiff was left with a 20 percent partial permanent disability of the left ankle and could not return to the duties of a swamper without at times, experiencing disabling pain. He further felt that walking on uneven surfaces, climbing, or standing for long periods of time would aggravate the injury and that the plaintiff would be forever substantially handicapped in competing in the laboring world.
The plaintiff himself testified that following the accident he had returned to the business of swamping and truck driving in the oil fields, but that he found his tasks to be very difficult because of his injured ankle. He explained that the loading and unloading of pipes and planks from the trucks involves walking on the stacked *251 items, which of course, form an uneven surface. The plaintiff left his original employer and went to work for another oil field trucking concern as a truck driver. Later on he applied for work on a tugboat as a deck hand but was turned down because of his injured ankle. Finally he obtained employment as a dump truck driver, which position he still held at the time of the trial.
The plaintiff testified that his ankle had bothered him continually since the accident and that he had missed several days’ work because of it. He stated at the trial that he still walked with a limp, that he could not jump, run, or walk on pipes, that he could not bend his ankle like he used to, and that his ankle always hurt on the right side and would swell up “ * * * real, real bad” nearly every night. He explained that even in driving the dump truck, which he was not required to load or unload, he had to use his left foot extensively to operate the clutch. On his oil field jobs the plaintiff was paid by the hour and on his dump truck job he was paid on a commission basis, but in both case if he did not work he was not paid.
The Louisiana Workmen’s Compensation Act in relevant part provides for compensation for an injury “* * * producing permanent total disability to do work of any reasonable character * LSA-R.S. 23:1221(2). The courts of this state have taken this to mean that, “A worker will be regarded as totally disabled if he is unable to do work reasonably of the same kind and character as that which his training, education, experience, and status in life qualify him to perform, in the customary way without any unusual difficulty or pain.” Malone, Louisiana Workmen’s Compensation Law and Practice, § 272, page 327. Of particular applicability to this case is the jurisprudence which clearly holds that an employee need not work when to do so would cause him substantial pain or would be deleterious to his health. Glidden v. Alexandria Concrete Co., 242 La. 626, 137 So.2d 894; Powell v. Patterson Truck Lines, Inc., La.App., 228 So.2d 254; Lantier v. Guy Scroggins, Inc., La.App., 223 So.2d 252.
The testimony of plaintiff, as well as that of his wife, his brother, and his landlord, all of which stated that they heard plaintiff’s complaints and saw the swelling in his ankle, clearly establishes that plaintiff cannot carry out his normal duties as either a swamper or truck driver without suffering substantial pain, hardship, and discomfort. This conclusion is supported by the medical findings of the expert witnesses. We therefore agree with the trial court in holding that plaintiff is totally and permanently disabled within the meaning of the Louisiana Workmen’s Compensation Act.
We are also in accord with the trial judge’s decision that plaintiff is not entitled to penalties and attorney’s fees for arbitrary and capricious failure to pay on defendant’s part. Defendant paid plaintiff workmen’s compensation at the rate of $45.00 per week from the time of his accident to August 6, 1969 on which date he was considered by his treating physician as being able to return to work with a 15% partial disability of the left ankle. Thereafter plaintiff was paid compensation at the rate of $12.50 until November 12, 1969. He had been driving trucks for Tom Hicks Transfer Company since approximately September 16, 1969. Under these circumstances we cannot say that defendant acted in an arbitrary or capricious manner.
Accordingly the judgment of the trial court is affirmed at defendant’s cost.
Affirmed.