DOMENGEAUX, Judge
(dissenting).
I respectfully dissent.
The majority “pretermits” the issue of disability and rests its decision solely upon its finding of lack of causal relationship between plaintiff’s accident and his subsequent disability. I shall address the issue of disability at the outset, proceed to establish a causal link between the disability and the accident, and finally deal with the aspect of this case relative to penalties and attorney’s fees.
DISABILITY
On February 15, 1970, plaintiff was in the employ of I. E. Miller & Sons, functioning in the capacity of driver of an oilfield gin pole truck. After driving his truck to a job site, plaintiff was assisting in the unloading of pipe to be used in the assembly of a drilling rig when a joint of that pipe rolled onto his left hand, causing a crushing-type facture to the middle and ring fingers of that appendage. Thereafter, unable to continue performing the duties required by his employment, plaintiff’s relationship with I. E. Miller & Sons was terminated. Subsequently he was hired as a gin pole truck driver by another company, Pelican Truck Lines, Inc.
A superficial review of these facts might belie plaintiff’s disability since he continued to work as an oilfield truck driver. However, a careful analysis reveals subtle but distinct variations in the two jobs.
The typical oilfield gin pole truck driver operates a large vehicle which is used in the assembly and disassembly of drilling rigs. In his employment with I. E. Miller & Sons plaintiff was required (as are most other oilfield truck drivers) to assist workers at the job site in the manipulation and transportation of pipe and other heavy objects. There was testimony to the effect that a gin pole truck driver’s duties usually involve about ninety percent driving and winch operation and about ten percent heavy manual labor. Plaintiff’s former job required him to drive a medium size gin pole truck devoid of many of the power assisted, labor-saving devices usually found on a larger vehicle.
In his present job with Pelican Truck Lines, Inc., plaintiff works under very specialized conditions. He drives the largest gin pole truck available, a 20-ton rig. This truck is replete with power assisted devices which aid the driver in his operation of the vehicle. The general consensus from the testimony is that a larger truck is more complicated to operate but less demanding physically. In addition, with Pelican, plaintiff is always provided with a. full-time helper and exempted from performing the normally required heavy labor associated with his employment position.
The secretary-treasurer of Pelican Truck Lines, Inc., Roy Windham, testified that plaintiff was hired under special circumstances, to-wit: that while he was a questionable employee as a normal oilfield truck driver, it was felt that his experience might compensate for his lack of physical ability to perform his tasks. Mr. Wind- *531 ham also expressed doubts that plaintiff possesses the capacity to perform any of the heavy labor normally associated with the job of oilfield truck driver.
Several of the doctors whose depositions were introduced at trial found that the plaintiff suffers from a palsy-type condition on his right side and that he relies more heavily upon his left arm and hand. Since his left hand sustained a crushing-type injury his capacity to use that dominant appendage has become highly diminished.
The trial judge found, and I concur, that in order to perform his previous functions fully as an ablebodied oilfield truck driver, the plaintiff would be forced to endure continuous pain and swelling in his left hand and fingers. A worker is not required to work in pain or in such diminished capacity that his activities will endanger himself and his fellow workers. Carroll v. Southern Casualty Insurance Company, 285 So.2d 370 (La.App. 3rd Cir. 1973), writ refused 288 So.2d 356; Chapman v. Travelers Insurance Company, 250 So.2d 248 (La.App. 3rd Cir. 1971). I find the situation presented in the instant case analogous to that of Chapman, supra. In Chapman, the plaintiff worked as a combination oilfield truck driver and swamper. His ankle was injured while he was engaged in loading segments of pipe on a job site. After his injury, plaintiff was unable to continue the work of oilfield truck driver and swamper, but found employment as a dump truck driver, which, while appearing to be similar employment, is in fact quite a different type of work. In finding the plaintiff totally and permanently disabled in Chapman, the court quoted Professor Malone’s Louisiana Workmen’s Compensation' Law and Practice, Section 272, page 327, as follows:
“ ‘A worker will be regarded as totally disabled if he is unable to do work reasonably of the same kind and character as that which his training, education, experience, and status in life qualify him to perform, in the customary way without any unusual difficulty or pain.’ ”
I find further similarity between the present litigation and the case of Futrell v. Hartford Accident and Indemnity Company, 276 So.2d 271 (La.1973). The plaintiff in Futrell was an automobile mechanic who suffered a ten percent functional impairment of the right extremity. The evidence indicated that the plaintiff was able to perform satisfactorily as an automobile mechanic but only with the assistance of numerous mechanical labor saving devices, the existence of which was not prevalent throughout the industry. As the Supreme Court stated in Futrell:
“The degree of Futrell’s disability must not, however, be judged by placing him in ideal working conditions. The test must be whether the injury has substantially decreased Futrell’s ability to compete with ablebodied mechanics in the general labor market.” (Emphasis added).
I find that in the instant case, plaintiff has secured employment only because of the benevolent attitude and willingness to assume a risk by his present employer, Pelican Truck Lines, Inc. It appears that nowhere else in the industry would plaintiff be able to find the type of ideal working conditions afforded by said employer. The injury to his left hand has decreased his attractiveness to other oilfield trucking concerns. I find significance in the fact that, after his injury, plaintiff was refused work by J. C. Duke, a former employer, because that company had no need for a truck driver in his condition. I must conclude that plaintiff is currently employed only because of special considerations made by his present employer in providing him with a truck which is physically easy to operate, a helper, and an exemption from the type of duties normally required in the industry of one working in his capacity. Finding plaintiff unable to return to the type of work in which he was engaged at the time of his injury, I agree *532 with the trial judge’s ruling that he is totally and permanently disabled within the intendment of the workmen’s compensation act.
CAUSATION
The plaintiff in a workmen’s compensation suit need not prove the causal connection between disability and an employment related injury to an absolute certainty. It is sufficient that he. demonstrate a reasonable probability that the disability is causally connected with the injury. Bryant v. Magnolia Garment Company, Inc., 307 So.2d 395 (La.App. 2nd Cir. 1975); Grigsby v. Argonaut Insurance Company, 297 So.2d 698 (La.App. 1st Cir. 1974); Chandler v. American & Foreign Insurance Company, 257 So.2d 825 (La.App. 3rd Cir. 1972); Norred v. Travelers Insurance Company, 236 So.2d 637 (La.App. 2nd Cir. 1970), writ denied 256 La. 842, 239 So.2d 354; Adams v. Home Indemnity Company, 180 So.2d 51 (La.App. 3rd Cir. 1965), writ refused 248 La. 697, 181 So.2d 398; Teekel v. Campbell Construction Company, Inc., 160 So.2d 447 (La.App. 2nd Cir. 1964).
In determining causal relation, great weight attaches to the fact of sudden change from a condition of health and ablebodiedness to one of disability immediately after the accident. Johnson v. Travelers Insurance Company, 284 So.2d 888 (La.1973); Matte v. Power Rig Drilling Company, Inc., 260 So.2d 19 (La.App. 3rd Cir. 1972), writ refused 261 La. 1048, 262 So.2d 37; Ardoin v. Houston Fire & Casualty Company, 235 So.2d 426 (La.App. 3rd Cir. 1970); Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (1969).
It is undisputed that plaintiff functioned adequately as an oilfield truck driver prior to his injury. Immediately after his accident he became incapacitated to such a degree that he was unable to perform any tasks related to the heavy labor aspect of his job. Therefore, I feel that the above-mentioned presumption of causality should be applicable to this case.
Much ado is made about the fact that the medical testimony indicates that plaintiff suffered from an arthritic condition prevalent throughout his body. As previously mentioned, there is also evidence to the effect that plaintiff also suffered from a partially disabled right side, the result of a possible childhood polio condition. I willingly concede that these afflictions contributed to plaintiff’s inability to function in his prior employment. However, the jurisprudence is well settled for the propositions that an employer takes an employee as he finds him, and that employee’s disability is compensable even though caused in part by a contributing pre-existent condition or pre-disposition. See Carter v. Avondale Shipyards, Inc., 308 So.2d 472 (La.App. 4th Cir. 1975); Odom v. Kaiser Aluminum & Chemical Corporation, 282 So.2d 580 (La.App. 4th Cir. 1973); Jones v. Douglas Public Service, 264 So.2d 267 (La.App. 4th Cir. 1972); Johnson v. Employers Mutual Liability Insurance Company of Wisconsin, 250 So.2d 38 (La.App. 3rd Cir. 1971); and Parish v. Fidelity & Casualty Company of New York, 124 So.2d 234 (La.App. 2nd Cir. 1960), cert. denied January 9, 1961.
It is also immaterial whether an employee’s continued disability directly results from an injury or from a condition resulting from an injury, or whether the injury was the sole cause, or merely a contributing cause. Norred v. Travelers Insurance Company, supra, Stovall v. S. Bender Iron and Supply Company, 152 So. 387 (La.App. 2nd Cir. 1934); Anderson v. Louisiana Oil Refining Corporation, 134 So. 343 (La.App. 2nd Cir. 1931); Taylor v. Southern Engineering Construction Company, 125 So. 877 (La.App. 2nd Cir. 1930).
The physicians who testified, mostly by deposition, were not altogether consistent in their findings. While it is true that most of them could find no neurological relationship between plaintiff’s crushing *533 injury to his hand and subsequent complaints of head, neck, and back pains, all the doctors recognized the seriousness of the hand injury.
Dr. C. W. Lowrey found a 15% disability of plaintiff’s left hand and acknowledged the existence of a palsy-type condition on the right side. Dr. Don W. Irby found that the arthritis in plaintiff’s injured fingers could have been traumatically induced. Dr. Ray E. King found a 5 to 10% disability of plaintiff’s left hand, pain in the injured fingers due to residuals of contusions to the digital nerves of those fingers, and opined that a permanent condition in that hand existed, which would continue to cause plaintiff pain upon activity. Dr. D. M. Kingsley found a 5% disability of plaintiff’s left hand. Dr. Bernard E. Doughty diagnosed plaintiff’s problem as a permanent traumatic arthritic condition and felt that as a result, plaintiff was ill equipped to compete on the labor market. Finally, Dr. Billy Nesbitt was of the opinion that plaintiff would be unable to resume his work if his duties included heavy lifting. There is little doubt in my mind that plaintiff has established a causal link between the crushing injury which he received to the third and fourth fingers of his left hand and the subsequent permanent impairment of those appendages.
While it is true that if plaintiff’s right side were healthy, and he did not suffer from an arthritic condition, the crushing injury would probably not be disabling, I feel that this latter injury was in effect, “the straw that broke the camel’s back”. Plaintiff was a risky employee at best, but the risk of his disability should be borne by the employer who hired him subject to those pre-existing deficiencies.
The finding of causation is a factual determination and within the province of the trial judge. In the case at hand the district judge had opportunity to review all of the- abovementioned medical testimony and even conducted his own examination of the plaintiff s disabled hand. He stated, for the record:
“Show that when he was asked to close his fist, he was able to hold his fingers together but he was not able to touch his palm with the tips of his fingers. Show that when he was asked to place his hand flat on the table, he did so but claimed that he was unable to raise his fingers from the flat table top on which they were resting. Show also that his fingers were noticably discolored in the portion of his finger closest to his palm, when he was trying to raise his fingers.

Well when he had it down, put it flat. It looks to me like it’s darker from here back.”
In his reasons for judgment the trial judge stated:
“The plaintiff claims he can work but a full day of heavy work causes swelling, loss of manual dexterity and strength and considerable pain that persists until he obtains adequate rest. His description of his own experiences fits in well with the medical testimony that reflects the condition of his hand varies from day to day and is dependent on the degree of work he has been doing. Plaintiff contends when he attempts any heavy work with his hand the swelling and pain occurs and reaches such proportions [sic] that he cannot perform the heavy work he once did without pain and endangering himself, equipment he might be using and customers’ machinery he might be lifting. The Court finds him credible and believes he has made a courageous and good faith effort to rehabilitate himself.”
Under the rules of appellate review set forth in the case of Canter v. Koehring Company, 283 So.2d 716 (La.1973), I feel that the evidence in this case “furnishes a reasonable factual basis for the trial court’s finding”, and I am unwilling to concur with my brothers of the majority in *534 finding manifest error. I strongly disagree with the unwarranted intrusion by this court into the domain of the trier of fact, and I would uphold the trial judge’s ruling on causation in the instant case.
PENALTIES AND ATTORNEY’S FEES
Finding the plaintiff totally and permanently disabled as a result of his accident while in the employ of I. E. Miller & Sons, I find it necessary to dispose of the issue of penalties and attorney’s fees. The trial judge awarded statutory penalties and the amount of $3,500.00 as attorney’s fees.
The defendant’s agent-insurance adjuster testified that based upon a report by Doctor Kingsley and the knowledge that plaintiff was working as a truck driver for another company, he concluded that this claimant was no longer totally or partially disabled and terminated weekly benefits shortly after receipt of said report. An analysis of Doctor Kingsley’s report is necessary in order to consider defendant’s basis for terminating compensation benefits.
' The report is dated June 1, 1970, but apparently it was not received by the defendant until approximately three weeks later.
In the portion of the report captioned “History” the Doctor states that:
“This 40-year old white male drove a truck for I. E. Miller & Son Trucking Company of Eunice, Louisiana, for about eight months prior to an accident on February 15, 1970. He was near Long-ville, Louisiana, loading drill pipe. Another worker dropped a piece of pipe across the patient’s left hand.”
Under the heading “X-rays” the Doctor stated:
“These x-rays show that the distal portion of the ungual tufts have been fractured and several fragments show in each of them.”
Finally, under the paragraph entitled “Remarks” the Doctor stated:
“In any event, at the present time, there is still noticeable stiffness' in the ring and middle fingers of the left hand and there is x-ray evidence of injury to the ungual tufts . . . . the findings on this date are compatable only with a crushing type of injury leaving some residual stiffness. I see no reason why this patient should not be able to drive a truck. It is possible the stiffness will persist. However, only use of the fingers can determine this point. The patient was therefore told to use his hand. I shall be glad to see him and check on his progress in several weeks to see whether any other opinion is indicated.”
I hardly find this physician’s report to be a reasonable basis for the conclusion that the plaintiff was no longer disabled from returning to his previous employment. As the report stated in its very first sentence, the doctor considered the plaintiff to be a truck driver but recognized the fact that he was injured while loading drill pipe. However, the doctor later remarked that he saw “no reason why this patient should not be able to drive a truck”. The defendant further relied upon a written statement taken by its insurance adjuster in which plaintiff stated that he worked strictly as a truck driver but then later fully described the events surrounding his injury and the activity in which he was engaged at the time of the accident. It is clear from both the doctor’s report and the statement of Mr. Lucas that his job entailed more than merely the act of driving a truck. I also find that Doctor Kingsley’s report indicates a residual stiffness and the existence of several bone fragments in the injured fingers. This evidence is somewhat inconsistent with the doctor’s conclusion that Mr. Lucas could return to his work as a truck driver. I feel that under these circumstances it was incumbent upon the defendant insurer to make further in *535 vestigation to determine the exact nature of plaintiff’s work and his ability to return to and function in that activity. See Trahan v. Rockwood Insurance Company, 284 So.2d 659 (La.App. 3rd Cir. 1973).
I also question defendant’s interpretation of Doctor Kingsley’s report in concluding that Mr. Lucas was not at least entitled to some compensation for partial disability benefits at that time. The report is very clear that there was a residual stiffness in the fingers and points to the existence of some bone fragments. See Fruge v. Pacific Employers Insurance Company, 226 La. 530, 76 So.2d 719 (La.1954); Breen v. Bituminous Casualty Company, 249 So.2d 338 (La.App. 4th Cir. 1971); Parish v. Standard Accident Insurance Company, 158 So.2d 892 (La.App. 3rd Cir. 1963).
The trial judge found that the defendant’s :
“ . . . election to terminate benefits after payment of merely a portion of what was due reflects the disregard for the obligation of the employer insured. The overall attitude reflects carelessness or callousness in handling of claims that violate the spirit of the act and anticipate good faith action by an employer or insurer and can be equated under the terms of La.R.S. 1201.2 [sic, 22:658] to a termination that is arbitrary or without probable cause.”
I agree with the trial judge’s finding that the defendant insurer failed in its duty to ascertain the full nature of plaintiff’s injury and its effect upon his ability to return to the type of work in which he was engaged at the time of his injury. Thus, I find no manifest error in the trial judge’s ruling that plaintiff’s compensation benefits were terminated arbitrarily and without probable cause, thereby entitling him to statutory penalties and the attorney fee award.
For the above and foregoing reasons I would affirm the judgment of the district court in all respects.