173 So.2d 199 (1965)
Myrthy D. WILKINS et al.
v.
ALLSTATE INSURANCE COMPANY.
No. 6319.
Court of Appeal of Louisiana, First Circuit.
March 8, 1965.
*200 John W. Anthony, of Talley, Anthony, Hughes & Knight, Bogalusa, for appellant.
John J. Hainkel, Jr., of Porteous & Johnson, New Orleans, for appellee.
Before ELLIS, LOTTINGER, LANDRY, REID, and BAILES, JJ.
LANDRY, Judge.
The sole issue posed by this appeal is the right of an automobile owner to recover penalties and attorney's fees from his own liability insurer because of the latter's alleged arbitrary and unreasonable failure and refusal to pay medical expense incurred in treatment of injuries received by the insured's wife and collision damage to the insured's vehicle resulting from an accident involving the insured automobile. Plaintiffs, husband and wife, instituted this action claiming the mentioned medical expenses and collision damage incident to an accident which occurred April 2, 1962, when the insured vehicle was struck from the rear by another automobile causing personal injury to Mrs. Wilkins and damage to plaintiff's vehicle. The trial court awarded plaintiffs judgment for medical expense and vehicle damage but rejected the claim for penalties and attorney's fees, hence this appeal.
Mrs. Wilkins maintains (and so testified) that within a few days of the accident in question she reported the matter by telephone to defendant's agent, Broyles, who, in substance, advised her to keep all her *201 medical bills and submit them for payment when she was completely recovered from her injuries and treatment therefor was terminated. According to Mrs. Wilkins, on April 20, 1962, on which date she made a premium payment to defendant's representative, Thornhill, in Bogalusa, Louisiana, she informed Thornhill of her conversation with Broyles and of Broyles' suggestion she wait and submit all bills for medical expense after she had recovered from her injuries. It is conceded by Mrs. Wilkins that she did nothing further until on or about April 1, 1963 when she brought Thornhill all medical bills incurred to that date. Thereafter, on at least two occasions Mrs. Wilkins inquired of Thornhill regarding the status of her claim and was each time advised she would hear directly from the company. No further communication was had between plaintiffs and defendant until institution of suit on February 24, 1964, except that in September, 1963, Mrs. Wilkins made inquiry of Thornhill regarding when she might expect payment of the bills tendered.
Plaintiffs acknowledge no formal proof of loss was ever submitted nor was a written report of the accident filed with defendant as required by the policy's provisions. It is further conceded by appellants that no demand for payment was made upon appellee by either appellants or their attorney other than by initiating suit, and neither has defendant ever expressly declined or refused payments of the medical expense or damage to appellants' automobile. In addition, the record discloses appellee was never furnished an itemized statement of the damages to the automobile until the day of trial.
Appellee's agent Broyles was not called to testify.
Thornhill denied any recollection of Mrs. Wilkins contacting him within a few days of the accident and mentioning her prior conversation with Broyles. According to Thornhill, he first learned of the accident when Mrs. Wilkins contacted him April 1, 1963, one year after the accident, and advised that she had been in an accident but had not reported it because she felt the other party was at fault and she would collect her damages from the offending motorist and his insurer. On this occasion Mrs. Wilkins presented him with a number of medical bills incurred in the treatment of her injuries. Thornhill transmitted these bills to the company by letter dated April 1, 1963, in which he advised that Mrs. Wilkins was involved in an accident in April, 1962, with another party who had been adjudged at fault. He further informed his superiors of the number of plaintiffs' policy. In addition his letter stated Mrs. Wilkins hoped to collect on the medical benefit provisions of the policy and Thornhill requested that she be advised directly. He also stated that one one or two occasions Mrs. Wilkins contacted him concerning disposition of her claim and eventually on September 10, 1963, he advised the New Orleans office by memorandum to please advise Mrs. Wilkins regarding the status of her claim.
The record discloses that on May 27, 1964, after filing of suit herein, defendant's counsel wrote counsel for appellants advising that appellants' medical claims would be paid upon submission of proper proof of loss.
The instant claim for penalties and attorney's fees is predicated upon the provisions of LSA-R.S. 22:658 which, in substance, provides for the payment of 12% penalties and reasonable attorney's fees to an insured under a policy of the type herein involved in the event the insurer shall arbitrarily, capriciously, or without probable cause, fail to make payment of an amount due under the policy within sixty days after receipt of proof of loss and demand therefor.
In the case at bar the insurer defends upon ground there was no demand as required by the statute and, alternatively, there was no denial of the claim or refusal to pay, consequently failure to pay was not *202 arbitrary, capricious or without probable cause, therefore, there is no claim under the applicable statute.
Appellants, however, maintain defendant's failure to pay was without probable cause and no demand was necessary.
It is settled law that LSA-R.S. 22:658 being a penal statute must be strictly construed. Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695; Nichols v. Iowa Mutual Insurance Company, 232 La. 856, 95 So.2d 338.
The pertinent law being penal in nature the requirement of a demand as an indispensable prerequisite to maintaining an action thereunder, must be met unless demand has been waived by the insurer. Sbisa v. American Equitable Assur. Co. of New York, 202 La. 196, 11 So.2d 527, 145 A.L.R. 332.
The demand contemplated by the statute in question is demand other than the mere filing of proof of loss with the insurer or the filing of suit, and is required only in those instances wherein the insurer has passively denied liability by failing to make payment within sixty days of submission of proof of loss. Sbisa v. Equitable Assur. Co., supra. Steadman v. Pearl Assur. Co., Ltd., 242 La. 84, 134 So. 2d 884. The demand envisioned by the statute is not required where there has been a denial of the claim or a refusal to pay on the part of the insurer. Sbisa v. American Equitable Assur. Co. of New York, supra. The law does not require a litigant to perform a vain and useless act.
The purpose of the proof of loss and demand required by the pertinent statute is to fully apprise and inform the insurer of the claim. It is obvious there can be no arbitrary or capricious refusal to pay in the absence of the insurer's knowledge of the existence of the claim. The requirement of proof of loss stipulated in the statute may be fulfilled otherwise than by furnishing such proof on forms furnished by the insurer. Any action on the part of the insured which fully apprises the insurer of the nature, extent and circumstances of the claim satisfies this obligation on the part of the insured. Mayes v. State Farm Mutual Automobile Insurance Co., La.App., 141 So.2d 890.
In the instant case it is unnecessary to determine whether plaintiffs' actions fulfilled the statutory requirement of proof of loss inasmuch as we find the sacramental requirement of demand has not been met herein.
Demand, when required may be either written or oral so long as it be shown to have fully informed and apprised the insurer of the insured's intention to press for or demand payment of the claim submitted. It is significant that the statute in question does not require written demand. What constitutes demand, however, is to be determined in the light of the facts and circumstances of each individual case. Nevertheless, as indicated by the cited jurisprudence, demand is an indispensable prerequisite to recovery and such demand must be separate and apart from and something over and above the mere submission of proof of loss (whether on insurer's forms or otherwise) supported by medical bills or invoices, statements or estimates of damage. If the insured submits proof of loss followed by mere silence and inaction on the part of the insurer (unaccompanied by denial or refusal to pay), there can be no incurrence of penalties until such time as demand is made and followed by the insurer's failure to pay within sixty days of date thereof. The foregoing, however, is without application in the event the record discloses circumstances tantamount to the insurer's waiver of demand.
We do not view Mrs. Wilkins' verbal reporting of the accident (even assuming she reported it to Broyles as she testified) constitutes demand within the contemplation of the pertinent statute. The record is clear her actions at all times were merely the performance of the routine matter *203 of inquiring as to the status of her claim. She frankly concedes that at no time did she demand payment or threaten suit in the event of defendant's failure to pay.
Nor can either Thornhill's letter of April 1, 1963, or his memorandum of September 10, 1963, be considered demands on the part of plaintiffs. It is clear that these documents were merely communications between defendant's said employee and his superiors advising them of the existence of plaintiffs' claims and suggesting that said superiors contact plaintiffs directly.
Finally, astute counsel for appellants maintains demand was unnecessary herein under the authority of the jurisprudence established in that line of cases which includes, inter alia, Mayes v. State Farm Mutual Automobile Ins. Co., La.App., 141 So. 2d 890. In this connection it is argued that demand is unnecessary when the insurer is informed of the claim and enters into negotiations for settlement thereof.
While we are in perfect agreement with the views on the subject matter expressed in the Mayes case, supra, the principle enunciated therein is patently without application in the case at bar.
The instant record is absolutely barren of the slightest proof defendant attempted to negotiate settlement of plaintiffs' claims until after suit was filed. Prior to institution of suit learned counsel for appellants made no effort whatsoever to contact defendant. It is clear beyond doubt there was no communication at all between esteemed counsel for appellant and any agent, representative or employee of defendant. Neither does the record reveal any attempt on the part of plaintiffs or offer on the part of defendant to settle or compromise appellants' claim.
The record does reveal that defendant was lax in handling plaintiffs' claim inasmuch as no effort was made to contact plaintiff or offer payment for several months following submission of the medical bills in April, 1963. However, it is of the utmost importance that at no time did defendant ever refuse or deny the claim or make an effort to negoitate its settlement. Defendant merely remained passive and did nothing thus giving rise to the necessity of a demand which never came. We conclude therefore plaintiffs have not laid the proper predicate for the claims asserted on this appeal. Sbisa v. American Equitable Assur. Co. of New York, 202 La. 196, 11 So.2d 527, 145 A.L.R. 332.
The views herein expressed eliminate the necessity of our considering appellee's alternative position its failure to pay was not arbitrary inasmuch as it never denied or refused to pay plaintiffs' claims.
Accordingly, the judgment of the trial court is affirmed at appellants' cost.
Affirmed.