STOULIG, Judge.
This is an appeal from a judgment awarding Thaddeus Rene Wilson $49 per week in workmen’s compensation benefits for a period of 400 weeks. The award, the result of consolidation of a petition by appellant for a declaratory judgment and appellant’s subsequent suit under the Workmen’s Compensation Act, was based upon a finding that Thaddeus was totally dependent for support upon his father, Albert Wilson, Jr., who at the time of his death was an employee of Union Carbide Corporation, a workmen’s compensation insuree of American Motorists Insurance Company. American Motorists has appealed this award, claiming that Thaddeus Wilson was only partially dependent upon his father and, therefore, not entitled to the maximum benefits under the Louisiana Workmen’s Compensation Act. Counsel for Thaddeus Wilson have answered, asking for statutory penalties and attorney’s fees based on what they allege was appellant’s arbitrary and capricious failure to pay the claim within the 60-day time limit specified by law.
Albert Wilson, Jr., was injured in an explosion at the Union Carbide plant in Taft, Louisiana, on July 6, 1970. Eight days later, on July 14, 1970, he died of burns suffered in the accident.
On January 23, 1968, almost a year and a half prior to his death, deceased had become the father of a son, Thaddeus Wilson, born out of wedlock (but legitimated) to Dicie Harris. Albert and Dicie never married and did not live together: Albert lived alone in an apartment and Dicie lives with Thaddeus in a separate establishment.
The two issues with which this court must concern itself are the matter of Thaddeus’s dependency and the question of whether or not statutory penalties and attorney’s fees should be assessed against the defendant. We will discuss them in that order.
The legal basis for the plaintiff’s claim to compensation and the court’s award of it is found in LSA-R.S. 23:1231 and 1232, which read as follows:
LSA-R.S. 23:1231:
“For injury causing death within two years after the accident there shall be paid to the legal dependent of the employee, actually and wholly dependent upon his earnings for support at the time of the accident and death, a weekly sum as hereinafter provided, for a period of four hundred weeks. If the employee leaves legal dependents only partially actually dependent upon his earnings for support at the time of the accident and death, the weekly compensation to be paid shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents in the year prior to his death bears to the earnings of the deceased at the time of the accident.”
LSA-R.S. 23:1232 (in pertinent part) :
“Payment to dependents shall be computed and divided among them on the following basis:
* * * * * *
(4) If one child alone, thirty-two and one-half per centum of wages of deceased.
*}i * * # ‡ jJ< »
LSA-R.S. 23:1251 provides that a child under the age of 18 years is conclusively presumed dependent upon the deceased employee who is his parent and with whom he is living at the time of the injury. LSA-R.S. 23:1252 states that “in all other cases, the question of legal and actual dependency in whole or in part, shall be determined in accordance with the facts as they may be at the time of the accident and death % ^ ”
Since there is no question as to the status of Thaddeus Wilson as the legitimated son of the deceased, and since it is well settled that children not living with the deceased *815 parent at the time of his death are nevertheless entitled to compensation if the requisite proof of support is met,[1] the only question in this regard left for our determination is the extent of actual dependency by Thaddeus upon his father for support.
After carefully reviewing the evidence and testimony contained in the record we are of the opinion that the plaintiff has succeeded in proving that this dependency was total. Dicie Harris was examined closely upon trial of the case and testified that for the first few months of the child’s life it cost roughly $52 per month to cover the child’s expenses. At the time of trial Dicie estimated this cost was roughly $56, including food, doctors bills, accessories, laundry and baby sitter cost. (She worked as a nurses’ aid and paid an aunt a minimal amount to keep the child while she was at the hospital.) She also testified that the child’s father, who was under a juvenile court order to pay $65 per month for the support of the child, always paid at least that amount and sometimes more. The money was not paid through the court, however, but was given to Albert’s mother, who in turn passed it on to Dicie. Mrs. Wilson substantiated this in her testimony. Dicie also testified that Albert, who was very proud of the child, spent additional sums on clothes for it from time to time.
Much argument was made by counsel for defense concerning “support” the child received from its grandparents, including toys, a baby bed, occasional meals and other items. We are not impressed. The amounts expended were not unusual for normal, loving grandparents and are not to be considered “support” within the meaning of the workmen’s compensation statute. Nor are we impressed with defendants’ breakdown of Dicie’s monthly bills by which it attempts to show the child was only partially dependent upon its father for support. There is no need for us to go into the other various items listed. Suffice it to say the child was totally dependent upon his father for support within the contemplation of the applicable workmen’s compensation provision and the trial court was correct in so holding. Accordingly, its judgment awarding Thaddeus $49 for 400 weeks in accordance with the formula set out by LSA-R.S. 23:1232 will not be disturbed.
We turn now to the issue presented by plaintiff’s claim to statutory penalties and attorney’s fees. We are in agreement with the opposing parties that the controlling legislation is LSA-R.S. 22:658, which regulates contracts of insurance and which reads as follows:
“All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney’s fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney’s fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney’s fees.”
*816 The language employed by this article has been the subject of a great deal of interpretation by the courts of our State. Much of it centers on the question of demand as required by the article, and the commencement of the 60-day period after which failure to pay by the insurer, if arbitrary, capricious or without probable cause, will entitle plaintiff to statutory penalties and attorney’s fees. We find these questions to be at issue in the present case. However, before discussing the specific facts which bring them into focus, we deem it appropriate to review those pronouncements of our courts which are dispositive of these issues.
In Steadman v. Pearl Assurance Company, 127 So.2d 366 (La.App. 4th Cir. 1961), the court held that demand is a prerequisite to the right of recovery of penalties under LSA-R.S. 22:658 and that failure to make such demand prevents recovery. It further stated:
“It is no longer an open question that the statute contemplates a demand being made after expiration of the sixty-day period where the insurer is merely guilty of a passive denial of liability of the claim. In Sbisa v. American Equitable Assur. Co. of New York, 202 La. 196, 11 So.2d 527, 534 (on rehearing), 145 A.L.R. 332, et seq., the Supreme Court said:
' * * * While the statute plainly contemplates a demand, other than the mere filing of a proof of loss and the filing of a suit in order for the penalties to attach, the requirement applies only in cases where the proof of loss has been filed and the company has passively denied liability by failing to make payment within sixty days from the date upon which it received the proofs or where it has failed to adjust the loss and tender to the assured the amount which is due under the policy. * * * ’ ” 127 So.2d at 368.
In accordance with this view the court upheld the trial court’s maintenance of a plea of no cause of action based on a failure of plaintiff to make a demand on defendant after the expiration of the 60-day period, and in so doing denied the imposition of statutory penalties.
Upon review of this case the Supreme Court at 242 La. 84, 134 So.2d 884 (1961), affirmed the judgment of the Court of Appeal insofar as it maintained the exception of no cause or right of action but otherwise reversed the judgment and ordered the matter remanded with instructions to the plaintiff to file an amended petition containing a copy of the proof of loss and the document or letter of demand, both of which were absent from the record. Justice Hamiter dissented, being of the opinion that the petition disclosed a failure to pay within 60 days after defendant was furnished a satisfactory proof of loss which itself constituted a demand. Accordingly, it was his feeling that the requirements for recovering the statutory penalties and attorney’s fees had been satisfied.
The case was retried on the issue of penalties and attorney’s fees and again reached the Court of Appeal, 167 So.2d 527 (La.App. 4th Cir. 1964), which held that the insured’s cover letter accompanying its proof of loss, and which concluded with the words “your prompt attention in concluding the claim would be greatly appreciated” was sufficient demand to constitute compliance with LSA-R.S. 22:658. In the course of its decision the court noted that its holding on first appeal that LSA-R.S. 22:658 contemplates a demand being made after expiration of the 60-day period where the insurer is merely guilty of a passive denial of liability of the claim, would apply only where there was no previous demand and where the proof of loss alone could not be construed as a demand in itself. The court reasoned that it would be absurd to require a second demand to be made after 60 days, merely because the insurer had passively refused payment by 60 days of silence. It *817 felt that such an interpretation would defeat the purpose of the statute and give the insurer additional time not intended.
The case of Wilkins v. Allstate Insurance Company, 173 So.2d 199 (La.App. 1st Cir. 1965), is also pertinent to an analysis of the requirements of LSA-R.S. 22:658. In this well-reasoned opinion the court, citing Steadman v. Pearl Assurance Company, 242 La. 84, 134 So.2d 884 (1961), and Sbisa v. Equitable Assur. Co., 202 La. 196, 11 So.2d 527 (1942), concurred in the conclusion that the demand contemplated by LSA-R.S. 22:-658 is demand other than the mere filing of proof of the case with the insurer or the filing of suit, and, further, that it is required only in those instances in which the insurer has passively denied liability by failing to make payment within 60 days of submission of proof of loss. The court then stated:
“Demand, when required may be either written or oral so long as it be shown to have fully informed and apprised the insurer of the insured’s intention to press for or demand payment of the claim submitted. It is significant that the statute in question does not require written demand. What constitutes demand, however, is to be determined in the light of the facts and circumstances of each individual case. Nevertheless, as indicated by the cited jurisprudence, demand is an indispensable prerequisite to recovery and such demand must he separate and apart from and something over and above the mere submission of proof of loss (whether on insurer’s forms or otherwise) supported by medical bills or invoices, statements or estimates of damage. If the insured submits proof of loss followed by mere silence and inaction on the part of the insurer (unaccompanied by denial or refusal to pay), there can be no incur-rence of penalties until such time as demand is made and followed by the insurer’s failure to pay within sixty days of date thereof. The foregoing, however, is without application in the event the record discloses circumstances tantamount to the insurer’s waiver of demand.” 173 So.2d at 202.
An application of the foregoing jurisprudence to the factual situation with which we are presented constrains us to hold that plaintiff has failed to satisfy the requirements of LSA-R.S. 22:658; specifically, he has failed to show satisfactory demand upon the insurer for payment and the passage of 60 days therefrom with arbitrary refusal of payment by insurer.
The record reflects that defendant’s representative Harry Spaulding contacted Dicie Harris by telephone shortly after Albert Wilson’s death, sometime between July 23 and August 6 of 1970. According to Dicie’s testimony she confirmed that she was the mother of Albert’s legitimated child, Thaddeus, who had been dependent upon his father for support. Dicie agreed to send— and did send — Spaulding a copy of Thaddeus’s birth certificate but did not make any statement which could be construed as a demand upon the insurer for payment. It may be argued that implicit in any submission of proof of loss is a demand for payment. While at first blush this argument may seem compelling, upon further reflection we do not find it so. Were this the case the words “and demand therefor” appearing in the statute would be rendered, superfluous and totally meaningless. We believe it was the intention of the drafters that these words be given significant meaning, particularly since this statute is penal in nature and must be strictly construed. Wilkins v. Allstate Insurance Company, supra. Accordingly, we do not find in Dicie’s conversation with Spaulding the requisite demand for the imposition of penalties.
The record discloses her attorney wrote Union Carbide a letter on September 1 which was forwarded to defendant insurer on September 9, informing them that he represented Wilson’s son and parents and requested an opportunity to examine the area of the explosion which resulted in Wilson’s death. The letter contained noth *818 ing which could be construed as a demand for payment.
It was not until October 13, 1970, that demand can be found. In a letter written on that date by plaintiff’s counsel to Union Carbide appears the following language:
“This claim and notice is being given you on behalf of his minor son and his surviving parents.
“Since more than sixty days has [sic] passed since the date of the accident, you are advised that claim is being made for 12% penalty and reasonable attorney fees.”
The letter of demand from plaintiff’s attorney dated October 13, 1970, computes the 60-day statutory period from the date of the accident. It is noted that this computation is in contravention of our existing jurisprudence, as discussed above. Thus, when Dicie Harris, as natural tutrix of Thaddeus Wilson, filed a suit to obtain the benefits of the Workmen’s Compensation Act for the minor child on October 30, 1970, there remained 43 days before the expiration of the statutory period. Plaintiff was within her legal rights in filing this suit when she did, and it is the opinion of this court that her action did not interrupt or suspend the tolling of the 60-day period, though it may have been vulnerable to an exception of prematurity as it relates to that segment of her claim for penalties and attorney’s fees. Therefore, the defendant may be subjected to the statutory penalties on the unpaid portion of the dependency benefits should its failure to pay within 60 days of demand be deemed to be arbitrary, capricious or without probable cause.
It affirmatively appears from the record that on November 27, 1970, the defendant did tender by letter weekly dependency benefits of $12.50 from July 6 through November 29, 1970, and stated that a similar amount would be remitted weekly until 500 payments were made. In view of our determination that the minor was entitled to $49 per week and benefits of $12.50 weekly were actually tendered, the only remaining issue for adjudication is whether the action of the defendant in tendering payment based on partial dependency was arbitrary and capricious under the facts and circumstances of this case.
The record reflects that before the plaintiff’s demand letter the defendant was aware of Thaddeus’s existence as the legitimated son of the decedent. It was also aware that the child lived with Dicie Harris and that she claimed it was dependent for support upon his father, and was further apprised of the deceased’s parents’ disclaimer of any dependency. The only question was the extent of Thaddeus’s dependency.
We have noted earlier that only a minor who had been living with his deceased parent at the time of his injury is conclusively presumed dependent upon that parent for support. In all other cases the dependency, whether in whole or in part, must be proven. Sandidge v. Aetna Casualty & Surety Co., supra. This being the case, there was no conclusive presumption that Thaddeus Wilson was totally dependent upon his father for support. While some of the facts and statements of the parties may have indicated that he was completely dependent, we are not prepared to hold that there was no room for reasonable doubt or that the circumstances pointed so compellingly to that conclusion that the failure of defendant to pay on the basis of total dependency was arbitrary and capricious or without probable cause. In support of this finding, we note that the defendant, within 60 days from the date of plaintiff’s demand, filed a declaratory proceeding to ascertain its legal responsibility to the rightful dependents. This action is indicative of the insured’s good faith effort to fulfill its contractual obligation.
In dealing with the question of whether or not failure to pay compensation was arbitrary and capricious the court in Lyons v. Swift & Company, 86 So.2d 613, 622 (La. App.2d Cir. 1956), made the following state *819 ment which we regard as particularly relevant to the present case:
“ * * * While the record discloses a considerable basis for plaintiff’s complaint, a consideration of the entire record leads us to the conclusion that defendant’s position was not so untenable as to classify its failure to pay compensation as arbitrary or capricious or that it acted without probable cause in presenting its defense to the court for determination. * * * ”
For the foregoing reasons the judgment appealed from is affirmed at appellants’ cost.
Affirmed.

. Sandidge v. Aetna Casualty & Surety Co., 29 So.2d 522 (La.App.lst Cir. 1947); American Mut. Liability Ins. Co. v. Sanders, 177 So. 498 (La.App.2l Cir. 1937).