289 So.2d 893 (1974)
Patricia TYLER
v.
OWENS ILLINOIS, INC. et al.
No. 5343.
Court of Appeal of Louisiana, Fourth Circuit.
February 6, 1974.
*895 Darleen M. Jacobs, New Orleans, for plaintiff-appellant.
Adams & Reese, Edward J. Rice, Jr., New Orleans, for defendants-appellants-appellees.
SAMUEL, Judge.
Following an injury to her thumb, plaintiff instituted this suit for total and permanent disability benefits, penalties and attorney's fees under the Louisiana Workmen's Compensation Act (LSA-R.S. 23:1021 et seq.). Named defendants are her employer, Owens Illinois, Inc., and its compensation insurer, Aetna Casualty and Surety Company. After trial on the merits judgment was rendered in favor of plaintiff and against the two defendants based upon a finding of a 20% permanent partial loss of use or function of the hand, as provided for by LSA-R.S. 23:1221 (4)(e), (o).
The judgment ordered defendants to pay benefits in the amount of $16.64 per week for a period of 150 weeks, less a credit of $343, representing compensation benefits already paid, with interest at 7% per annum from date of judicial demand on all amounts past due, a penalty in the amount of 12% of compensation due, and attorney's fees in the amount of $700. Plaintiff and both defendants have appealed.
In this court plaintiff contends: (1) she is entitled to a finding of, and to receive benefits for, permanent total disability; (2) she is also entitled to recover certain medical expenses incurred for treatment of her injury and trial and not included in the trial court judgment; and alternatively, in the event this court does not conclude she is entitled to a finding of, and benefits for, permanent total disability, (3) she is entitled to recover for temporary total disability. Defendants contend: (1) they should not have been cast for penalties and attorney's fees; and (2) plaintiff's recovery should be limited to a 10% disability of the hand rather than the 20% awarded by the trial court.
These facts are not in dispute: Plaintiff earned approximately $128 per week as a "selector" for defendant Owens Illinois. Her duties were to inspect bottles, throw away defects, pack good bottles and unjam the conveyor belt when it became clogged. She was trained by this defendant to learn to recognize defects, how to roll the bottles to assist in inspection, and how to increase the speed of inspection and packing.
On December 20, 1970 plaintiff sustained a severe laceration at the base of her right thumb in the course and scope of her employment. She was taken to a hospital where Dr. Kenneth Veca, defendant's orthopedic specialist, operated on her hand to correct an injured nerve. She was hospitalized for two days, remained out of work for an additional six weeks during which time she was paid compensation, and then returned to work for approximately six weeks. She complained she could not perform her duties without pain as quickly and as easily as she had done before the accident.
Testifying on behalf of plaintiff in addition to herself were two fellow employees who demonstrated the proper method required to handle the bottles, and three medical experts, Drs. Donald E. Richardson, a neurosurgeon, Byron Unkauf, an orthopedic surgeon, and John E. Lindner, a general practitioner. Testifying on behalf of defendants were Coy Simpson, shift foreman for Owens Illinois, Dr. Kenneth Veca, an orthopedic surgeon, and Dr. Richard Warren Levy, a neurosurgeon.
The medical evidence is as follows: Dr. Veca, defendant's witness, testified he saw plaintiff on December 20, the date of the accident, when she was admitted to the *896 hospital. He performed an operation on the digital nerve on the ulna aspect of the right thumb which nerve had been completely severed. This nerve permits a person to perceive sensation in the distal phlanx of the thumb. There was no other nerve damage. Plaintiff was hospitalized for two days. She was followed as an outpatient until January 29, 1971, at which time Dr. Veca was of the opinion she could return to work.
Plaintiff was again seen by Dr. Veca on March 15, 1971. She complained of pain in the area radiating to the neck and decreased sensation in the thumb. Severence of the digital nerve did not affect the mobility of plaintiff's hand or her thumb, but did affect the sensitivity. The doctor conceded plaintiff could notice a lack of sensation in the thumb but considered, nevertheless, that she could manage the duties of her job although if hot bottles came on the line the work would be more hazardous than was normally the case due to the loss of sensation in the thumb. He was of the opinion plaintiff's only problem connected with performing the duties of her job would be the inability to feel heat immediately in the affected area, but since heat could be felt in all other areas of the hand it would not affect her ability to do the work. He felt plaintiff's complaints of pain in the hand and arm were not causally connected with the thumb injury. He was of the further opinion plaintiff had a 20% disability of the right hand on the date of the March 15, 1971 examination. It was then too early to determine the amount of permanent disability she ultimately would sustain and the disability could be expected to lessen with the passage of more time. Although plaintiff was scheduled to return after the March 15 examination, she did not do so and Dr. Veca did not see her again.
On April 5, 1971 Dr. Byron Unkauf examined the plaintiff. She complained of abnormal sensation of the thumb. He found a well-healed 2 inch surgical scar over the first and second fingers in the thumb nestle area, slight atrophy of the pulp of the thumb with no loss of abduction in this area, complete loss of sensation, good range of movement of all of the joints of the thumb, and slightly limited abduction of the thumb itself. In his opinion abnormal sensation would interfere with plaintiff's dexterity and consequently would be hazardous in performing her job. Because of the nerve damage it was too early for an estimate of a permanent percentage of disability but at the time of trial the doctor placed the temporary disability of the right hand and thumb "in the vicinity of 60%". However, he felt she would not make much more progress and probably would have a 40% to 50% permanent disability of the right hand.
Plaintiff was seen by Dr. Donald Richardson on August 18, 1971 at the request of her attorney. She complained of numbness in the distal two-thirds of the thumb. Examination revealed a decrease in mobility and sensation. In his opinion plaintiff was permanently disabled, having lost half of her sensory function of the thumb, and considering the thumb to be 40% of the hand as a whole, her disability would be 20%. The disability would not change, would restrict the use of her hand, and the loss of sensation would interfere with her grip. He felt she would have great difficulty if she were to continue in her position as a selector. He did not anticipate that her hand would improve with time. Plaintiff had not lost the motor power of the thumb but had lost the sensory function and had a clumsiness which was secondary to the numbness.
On September 21, 1971 plaintiff was seen by Dr. John E. Lindner. His examination revealed plaintiff had a weakened, diminished grip, could not close her hand completely and had some atrophy of the muscle and thumb and index finger. Treatment consisted of B-12 injections, ultrasonic vasodilators and active and passive exercises. Plaintiff complained of pain, numbness and a little burning sensation. Diathermy was used to alleviate the *897 pain. Plaintiff was treated on ten occasions and would need additional treatment over a long period of time. This doctor was of the opinion plaintiff could not adequately perform the duties of her job, that she would be a hazard to the company, to herself, and to the people associated with her because of the lack of sensation in the thumb. At the time of his examinations plaintiff exhibited a weakness in her hand, could not close it completely, and he felt that handling bottles at a high rate of speed would be hazardous.
Dr. Richard Warren Levy saw plaintiff on June 15, 1971, 5½ months after her injury. At that time she was complaining her thumb was easily fatigued and she occasionally dropped things. Half of her thumb was numb, at times her entire right hand was painful and occasionally she felt pain in all of the fingers of her right hand. She also complained of headaches, stomach aches, nausea and vomiting. Examinations revealed a scar, no atrophy. Strength was normal and there was numbness to pin prick test over the medial half of the palm surface of the thumb. Dr. Levy found plaintiff had sustained a severed digital nerve to half of the palm surface of the right thumb. The other complaints (headaches, stomach aches, nausea and vomiting), were in no way connected with the hand injury, nor were complaints of pain in the hand and arm, and the loss of feeling in the thumb was not a complete loss.
Dr. Levy also saw plaintiff on October 22, 1971, 3 days prior to the trial. She had the same complaints with the hand and the thumb, was unable to open the thumb all the way from the palm and therefore felt she was unable to pick up bottles rapidly. His findings were the same as in his previous examination. He was of the opinion she could perform the duties of her occupation, that the numbness would not prevent her from lifting or turning the bottles. In arriving at a percentage of disability he considered the thumb 50% of the hand, the motor aspect 25%, and the sensory aspect 25%. Since only half of the thumb was afflicted with the loss of sensation, 12½% would be too high because she had not lost all of the sensation in half the thumb. Consequently, he placed her permanent disability at 15% of the right hand and 5% of the thumb.
Plaintiff testified she returned to work 6 to 7 weeks after the accident. She worked at her old job for approximately 6 weeks but during that time was not as fast as she had formerly been, her hand did not and does not open and close all the way, the thumb is numb and the whole hand pained her. She dropped many more bottles than formerly and needed assistance from the other girls.
Coy Simpson, the shift foreman, testified that after her return to work plaintiff satisfactorily performed the same duties she had performed prior to the accident, although she frequently complained of headaches and other ailments unrelated to the thumb injury.
The record also reflects that Owens Illinois provides gloves for its selectors if the bottles are too hot, but some of the employees prefer to work without them, and if the bottles are too hot necessary steps could be taken to cool them. In addition, the record contains testimony by both Mr. Simpson and one of plaintiff's lay witnesses, a selector co-worker, that an ability to "roll" bottles was not a requirement of the position of selector, many selectors did not "roll" bottles, and none had ever been fired for not doing so. The "rolling" of bottles is the primary function giving rise to plaintiff's complaint about inability to properly perform her work and the primary source of the complaint relative to the danger of burning her hand and fingers.
We do not agree with plaintiff's first contention, that she is entitled to a finding of permanent total disability. The question presented is whether or not she is able to perform work of the same or similar *898 kind as that which she performed prior to the accident.[1] This is a question of fact which the trial court resolved in favor of the defendants and which we can reverse only for manifest error.
Here there is a conflict in the evidence. The testimony of plaintiff and her three medical experts supports her contention, while the testimony of Mr. Simpson, the defendant shift foreman, and defendants' two medical experts, together with some of the other evidence, support the conclusion reached by the trial court. As a plaintiff in a workmen's compensation case has the same burden of proof as a plaintiff in other civil matters, to prove his case by a reasonable preponderance of the evidence,[2] we cannot say the trial court committed either manifest or other error. We note there is no evidence showing the pain of which plaintiff complains is sufficiently substantial or appreciable to support her claim on that basis alone.[3]
We do agree with plaintiff's second contention relative to certain medical expenses. The judgment on appeal makes no provision for Dr. Lindner's bill or the examinations of Drs. Unkauf and Richardson. The record reflects Dr. Lindner's bill was in the sum of $180. We have been unable to find any evidence relative to the charges, if any, of Dr. Unkauf or Dr. Richardson other than their fees for testifying as medical experts. The trial court indicated it would fix those fees in the amounts of $125 in the case of Dr. Unkauf and $150 in the case of Dr. Richardson. However, the judgment itself is silent as to those fees. Accordingly, we will amend the judgment to award the medical bill of Dr. Lindner in the sum of $180 and to tax as costs the expert witness fees of Dr. Richardson in the amount of $125 and Dr. Unkauf in the amount of $150.
We find no merit in plaintiff's third contention relative to her claim of temporary total disability[4] instead of the permanent partial loss of use or function of a member under LSA-R.S. 23:1221 (4) (e), (o) as found by the trial court. By definition of the three words involved, temporary total disability can mean only total disability which is not permanent. Therefore the trial court conclusion that plaintiff was unable to perform her work when she returned to her employment following the accident, a conclusion we affirm, is determinative of the contention. As the conclusion is that she is no longer disabled within the purview of the act, she is relegated to the compensation awarded for partial loss of the use or function of the hand. Under the act there can be no temporary total disability where there is no disability.
With regard to defendants' appeal, we agree with their first contention, that they should not have been cast for penalties and attorney's fees. Insofar as that contention is concerned, we follow what this court said in Butler v. Peter Kiewit & Sons Company, La.App., 281 So. 2d 467, 469:
"Penalties and attorney's fees for failure to pay a workmen's compensation claim within the required time can be imposed on an employer only by virtue of LSA-R.S. 23:1201.2. That statute permits recovery of penalties and attorney's *899 fees only against an employer who `is not covered by insurance.' As the employer in this case was covered by workmen's compensation insurance issued by Aetna, penalties and attorney's fees cannot be imposed on Kiewit."
"Penalties and attorney's fees for failure to pay a workmen's compensation claim within the required time can be imposed on a workmen's compensation insurer only by virtue of LSA-R.S. 22:658. That statute permits recovery of penalties and attorney's fees against such an insurer `when such failure [to pay the amount of the claim] is found to be arbitrary, capricious, or without probable cause.' Under our settled jurisprudence penalties and attorney's fees cannot be awarded against a workmen's compensation insurer where it reasonably relied on medical reports indicating the employee could return to his usual occupation and duties."
Here, penalties and attorney's fees cannot not be imposed on the employer, Owens Illinois, because it was covered by workmen's compensation insurance issued by Aetna. And, insofar as compensation other than for partial loss of use or function of the hand is concerned, such penalties and fees cannot be imposed on the defendant insurer, Aetna, because it reasonably relied on the report of Dr. Veca who was of the opinion plaintiff could return to work. Insofar as compensation for the partial loss of use or function of the hand is concerned, Aetna did not know the amount or percentage of that loss, knowledge necessary for a determination of the amount of compensation to be paid. As we have pointed out, the treating surgeon, Dr. Veca, did not have an opportunity to reach a conclusion as to permanent residual loss. In addition, the record is devoid of any evidence showing either that any of the residual loss determinations of plaintiff's doctors were made known to Aetna at any time before the filing of suit, or that any demand was ever made on Aetna for payment of the compensation being discussed. Under these circumstances, particularly in the absence of the demand required by LSA-R.S. 22:658,[5] we also must disallow the penalties and attorney's fees awarded against the insurer. We will amend the judgment accordingly.
We find no merit in defendants' second contention that recovery should be limited to a 10% permanent partial disability of the hand. As the four medical experts who gave percentage estimates, Drs. Veca, Unkauf, Richardson and Levy respectively evaluated that disability at 20% (as of March 15, 1971), 40%-50%, 20% and 15%, clearly we cannot say the trial court erred in finding a 20% permanent partial loss of use or function of the hand.
For the reasons assigned, the judgment appealed from is amended to award plaintiff the additional sum of $180 for the medical bill of Dr. Lindner, to tax as costs the expert witness fees of Dr. Richardson in the amount of $125 and Dr. Unkauf in the amount of $150, and to annul and set aside the awards of penalties and attorney's fees. As thus amended, and in all other respects, the judgment is affirmed; all costs in both courts to be paid by the defendants-appellants.
Amended and affirmed.
GULOTTA, J., concurs in part; dissents in part with written reasons.
GULOTTA, Judge (concurring in part; dissenting in part).
I respectfully dissent from that part of the majority opinion which denies recovery to plaintiff of penalties and attorney's fees. Dr. Kenneth Veca, the orthopedic surgeon who performed surgery on plaintiff and whose testimony was offered by defendant *900 testified[1] that in his opinion plaintiff had a 20 percent disability. The last occasion plaintiff was seen by Dr. Veca was on March 15, 1971. A report dated March 16[2] was made by Dr. Veca. Presumably, the insurer was aware of their doctor's opinion that plaintiff had a 20 percent disability at the time of the report. The insurer than is charged with knowledge of the opinion of the doctor as to the extent of the disability. A refusal to make payment to the extent of that disability, in my opinion, is arbitrary and without probable cause.
I am of the further opinion that the requirement that "demand" be made was met by plaintiff. In American Motorists Insurance Company v. Wilson, 256 So.2d 813 (La.App. 4th Cir. 1972), we denied penalties and attorney's fees concluding that plaintiff in that case failed to show he made the satisfactory demand required under LSA-R.S. 22:658. Hence, the language of the court in American Motorists Insurance Company v. Wilson, supra, at page 817 is significant. The court stated in citing Wilkins v. Allstate Insurance Company, 173 So.2d 199 (La.App. 1st Cir. 1965), as follows:
"Demand, when required may be either written or oral so long as it be shown to have fully informed and apprised the insurer of the insured's intention to press for or demand payment of the claim submitted. It is significant that the statute in question does not require written demand. What constitutes demand, however, is to be determined in the light of the facts and circumstances of each individual case. * * *"
In the instant case, compensation was paid for six weeks and plaintiff returned to her employment for an additional six weeks after which complaint of decreased sensation in the thumb and other unconnected complaints compelled her return to Dr. Veca on March 15. Plaintiff did not return to work thereafter. Dr. Veca's opinion obtained from his treatment of the plaintiff as well as the examination of March 15, 1971 (at which time he concluded plaintiff had a 20 percent disability) coupled with plaintiff's failure to return to work under the circumstances "fully informed and apprised the insurer of the insured's intention to press for or demand payment of the claim submitted."[3] Suit was filed on May 26, 1971.
I might add that while I agree with the conclusion reached by the majority, i. e., that the manifest error rule will not permit a finding of permanent and total disability, there is ample medical and lay evidence to reach a different conclusion. However, as I understand the manifest error rule, where there is a conflict in the testimony, we cannot reverse the judgment of the trial court because we may conclude that our own evaluations and determinations are as reasonable as that of the trial judge. Canter v. Koehring Company, La.App., 283 So.2d 716 (1973).
Accordingly, I concur in part and dissent in part.
NOTES
[1] Knispel v. Gulf States Utilities Co., 174 La. 401, 141 So. 9; Scott v. Fulton Bag & Cotton Mills, La.App., 65 So.2d 397; Gallow v. Wilson P. Abraham Construction Company, La.App., 197 So.2d 680.
[2] Hebert v. Your Food Processing & Warehouse Co., La.App., 170 So.2d 765, aff'd, 248 La. 197, 177 So.2d 286; Bates v. American Insurance Company, La.App., 158 So.2d 70.
[3] Cain v. Wilson Warehouse Company, La. App., 193 So.2d 97; Ragusa v. Aetna Casualty & Surety Company, La.App., 190 So. 2d 122; Moreau v. Employers Liability Assurance Corp., La.App., 180 So.2d 835; Taylor v. Meeker Sugar Cooperative, Inc., La. App., 177 So.2d 140; Hebert v. Your Food Processing & Warehouse Co., supra, footnote 2.
[4] LSA-R.S. 23:1221(1).
[5] See Moore v. St. Paul Fire and Marine Insurance Co., 251 La. 201, 203 So.2d 548; American Motorist Insurance Company v. Wilson, La.App., 256 So.2d 813; Antoine v. Houston Fire and Casualty Company, La. App., 232 So.2d 588.
[1] According to plaintiff, Dr. Veca is the doctor for defendant.
[2] The report is not contained in the record.
[3] American Motorists Insurance Company v. Wilson, supra, 256 So.2d at page 817.