338 So.2d 1217 (1976)
Alvin BROUSSARD, Plaintiff-Appellee,
v.
SUBSURFACE COMPLETION SERVICE, INC., et al., Defendant-Appellants.
No. 5694.
Court of Appeal of Louisiana, Third Circuit.
November 10, 1976.
*1218 Don L. Broussard, Lafayette, for defendant-appellants.
Caliste Beard, Jr., and Stanford B. Gauthier, II, Lafayette, for plaintiff-appellee.
Before DOMENGEAUX, WATSON and HUMPHRIES, JJ.
HUMPHRIES, Judge.
Defendants Subsurface Completion Service, Inc., (Subsurface) and its workmen's compensation carrier Travelers Insurance Company (Travelers) appeal the judgment awarding plaintiff, Alvin Broussard, workmen's compensation benefits of $65.00 per week, beginning September 14, 1973, for the period of his disability but not to exceed 500 weeks, together with legal interest on *1219 all past due amounts, all medical expenses related to the accident and costs of court. Plaintiff has answered the appeal asking that the judgment be affirmed and that attorney's fees and penalties be assessed defendants for their arbitrary and capricious discontinuance of plaintiff's compensation benefits. We affirm the trial court's award and deny plaintiff's prayer for attorney's fees and penalties.
A brief summation of the facts is presented in order to outline the relationship of the litigants.
Plaintiff Alvin Broussard was injured on September 14, 1973 while working for Subsurface. The cause of the injury was the dropping of a vice-like tool weighing approximately 250 pounds on his left foot. As a result of this accident, Broussard sustained a fracture of two metatarsal bones just behind the big toe.
It was stipulated at trial that Broussard was injured in the course and scope of his employment and that he was entitled to $65 per week compensation benefits.
Following his injury, plaintiff consulted Dr. Lee Leonard who immobilized his left leg. This treatment proved ineffective and an operation called an arthrodesis (bone fusion in the area just behind the big toe) was performed on or about April 16, 1974 by Dr. William Meuleman. Dr. Meuleman continued to treat plaintiff until sometime in July, 1974 when he released him to return to work. It was Dr. Meuleman's opinion that the operation was a success and plaintiff had recovered. Compensation and medical expenses were paid to Broussard from the time of the accident until terminated on July 30, 1974 following Dr. Meuleman's report.
Following the doctor's release plaintiff did not return to work for Subsurface because of pain in his ankle. The record reflects that he did return to the labor market and secured several jobs similar and dissimilar to the type of work he did at the time of his injury. However, plaintiff maintains that in all of these jobs he was hindered in the regular performance of his duties because of the recurrence of swelling and tenderness in his left foot.
In October of 1974, Broussard returned to Dr. Meuleman with the complaint that his left ankle had given way while he was running and he had fallen. Dr. Meuleman examined the patient, took x-rays and diagnosed his malady as a sprained ankle. It was the doctor's opinion that the fusion site was still intact.
On November 27, 1974 plaintiff consulted Dr. Byron M. Unkauf, a certified orthopedic surgeon, about the continuing pain in his ankle. Based upon x-rays, Dr. Unkauf was of the opinion that the bone fusion had not united. He found false movement in the fusion on clinical examination. There was no doubt in the doctor's opinion that Broussard was in pain and the limited mobility of the left foot would cause him trouble in climbing ladders and making other awkward movements. For some unexplained reason, Dr. Unkauf's findings were not expressed to either plaintiff or defendants until he wrote a report which was received by Broussard's attorney sometime in September, 1975. This was some ten months after Dr. Unkauf's examination of Broussard and some three months after suit was filed.
On September 3, 1975 Broussard consulted Dr. Spencer Walton concerning an injury to his foot while he was employed by Superior Electric Wireline Company in August of 1975. This injury was incurred when Broussard fell some three feet stressing his left ankle upon impact. Dr. Walton during his examination, discovered that Broussard had a surgical scar on his foot indicating some type of operation. Dr. Walton's x-rays revealed only a partial union of the attempted bone fusion. Evidently two of the bones had united but the third had not. It was Dr. Walton's opinion that there never was a total union at the fusion site. He discovered motion in this area of the foot which produced tenderness and pain. He felt the dictated course of therapy was the use of a corrective shoe. If this conservative treatment failed, he recommended another operation.
*1220 Plaintiff obtained the shoes recommended by Dr. Walton but it did not relieve his pain.
He testified he has a tendency to be clumsy and suffers persistent pain when working. He is restricted in work such as not being able to climb ladders or carry heavy articles because of pain and a balance problem. Testimony revealed that Broussard has only a ninth grade education and no special training. This lack of education and training restricts him to the common labor market.
It is established jurisprudence that even though a workman who returns to substantially the same type of employment because of economic necessity may still be considered totally and permanently disabled if, after the return to employment, the laborer must function in substantial pain. Glidden v. Alexandria Concrete Co., 242 La. 626, 137 So.2d 894 (1962); Carroll v. Southern Casualty Insurance Company, 285 So.2d 370 (La.App. 3rd Cir. 1973); Chapman v. Travelers Insurance Company, 250 So.2d 248 (La.App. 3rd Cir. 1971). The trial court was of the opinion that the evidence, both expert and lay, indicated that Broussard was suffering from a disability and was in substantial pain. It is reiterated that both Dr. Walton and Dr. Unkauf who examined Broussard, after his release to return to work found by x-ray that there was a non-union at the fusion site and, that this non-union caused a lack of mobility and constant pain when stress was applied to the foot. Further, it is noted that Broussard still complained of pain even though he purchased and used the corrective shoes recommended by Dr. Walton. A determination by the trial court when supported by the evidence cannot be reversed on appeal.
Defendants assert, in the alternative, that the judgment should be reversed because the trial court failed to hold that the subsequent accident was the cause of Broussard's disability. The jurisprudence holds that where continued disability is established, which relates back to the initial accident, the burden is on the employer to prove that some other accident caused the disability. Jagneaux v. American Universal Insurance Co., 231 So.2d 601 (La.App. 3rd Cir. 1970); Hull v. Liberty Mutual Insurance Company, 236 So.2d 847 (La.App. 1st Cir. 1970). The facts of the instant case speak for themselves. Dr. Unkauf who examined the plaintiff 10 months before the alleged second accident found non-union at the fusion site. Suit was filed three months before the alleged second accident. Finally Dr. Walton, who also found non-union after examining Broussard following the "second accident" of August 1975, was of the opinion that the second accident did not cause plaintiff's disability. We believe the trial court to be correct in concluding that the second accident was not a factor contributing to plaintiff's disability.
Pertaining to the question of penalties and attorney's fees, the relevant facts are that following the operation Dr. Meuleman, the treating physician gave the employer and its insurer Travelers a report dated July 8, 1974, stating that Broussard's injuries had healed and that he could return to work, unconditionally. No demands were made and no other physician's reports were furnished Travelers until after suit was filed on May 30, 1975. Plaintiff did not supply the report of Dr. Unkauf, dealing with his evaluation of Broussard's disability, dated November, 1974 until sometime in September of 1975, over three months after suit was filed. Dr. Walton's report, dealing with his diagnosis of Broussard's malady, was not brought to the defendant's attention until the doctor was sworn to testify at the trial.
Based upon this evidence we cannot say the trial court erred in denying penalties and attorney's fees for the insurer's cessation of payment of benefits as of July 30, 1974. Conner v. Travelers Insurance Company, 324 So.2d 903 (La.App. 3rd Cir. 1975); Levine v. Liberty Mutual Insurance Company, 305 So.2d 665 (La.App. 3rd Cir. 1974); Tyler v. Owens Illinois, Inc., 289 So.2d 893 (La.App. 4th Cir. 1974).
Cursory reading of R.S. 23:1201.2 indicates that penalties and attorney's fees may *1221 not be recovered from an employer (in this case Subsurface Completion Services, Inc.) unless the initial liability is not covered by insurance. See Tyler v. Owens Illinois, Inc., 289 So.2d 893 (La.App. 4th Cir. 1974).
The decision of the trial court is correct in all respects.
AFFIRMED.