SCHOTT, Judge.
Plaintiff was awarded workmen’s compensation benefits for a total and permanent disability. She was injured on May 26, 1975, when she was operating a bus for defendant and the seat collapsed. Defendant has appealed from the judgment contesting disability and she has answered the appeal seeking statutory penalties and attorney’s fees.
Upon being examined by defendant’s physician shortly after the accident plaintiff was referred to Dr. Robert L. Appleb-aum, a neurosurgeon. Following a myelo-gram in June a laminectomy and removal of a free fragment of disc between L-5 and S — 1 were performed. According to this physician she made an excellent convalescence and he felt that she could return to her usual occupation on December 8, 1975.
On December 22, 1975, plaintiff returned to work and drove a bus but she did not return after that one day. She stated that she experienced great pain. She returned to Dr. Applebaum in January, 1976, was examined by one of his associates, and was advised to remain at home and to return to his office the following month. On March 17 plaintiff was still complaining of pain on her visit to Dr. Applebaum, and also complained about recent swelling in her right knee and calf. Dr. Applebaum found the calf to be slightly swollen and thought there might be a recurrence of phlebitis which had developed after the surgery and he advised plaintiff to restrict her activities for two weeks.
Plaintiff returned to Dr. Applebaum on April 28, reporting that she had returned to limited duty for about two weeks in the first part of that month but had quit because of increasing pain in her back. Dr. Applebaum advised her to restrict her activities and to return the following month. He also referred her to an orthopedist, Dr. Hyman Soboloff. By the time of the next visit on May 10, 1976, Dr. Applebaum felt that she could return to light duty and noted that this opinion was shared by Dr. Soboloff who had been treating her knee. By June she was still complaining of pain in her back and stated that she had not returned to light duty because she had been fired. Another myelogram in June showed no evidence of recurrent disc. She continued to receive physiotherapy on a thrice weekly basis. In the meantime she was scheduled for knee surgery on the knee in July, 1976, under the care of Dr. Soboloff. The next time Dr. Applebaum saw her was in November, 1976, when she was still complaining of intermittent pain in the low back, but on examination he discharged her because he felt there was no need for further neurosurgery or neurological procedures.
It was at this point that Dr. Applebaum on November 17, 1976, advised defendant as follows:
“. . . From a neurologic point of view, I felt there was no reason the patient could not return to her usual and customary occupation. The patient has a five to ten per cent partial permanent .disability of the body as a result of her lumbar laminectomy. This is an anatomical rating and should not be confused with a functional disability.”
Plaintiff returned to Dr. Applebaum on May 10, 1977, complaining of pain in her low back on a constant basis. Examination revealed minimal limitation of motion in the low back but no muscle spasm and a normal lumbosacral curve. He concluded that there was no evidence of disc disease or nerve irritation and recommended orthopedic evaluation if her back pain persisted. In November and December, 1977, she returned to him with similar complaints and similar findings by the doctor, and after the *1356 November visit he reaffirmed that there was no reason she could not perform her duties as a bus driver. On cross examination, Dr. Applebaum admitted that his opinion of plaintiff’s disability was strictly from the standpoint of a neurosurgeon and recognized that she might have some disability which would be within the expertise of an orthopedist.
When plaintiff first saw Dr. Soboloff on April 20,1976, she complained of soreness in the back. On examination he found no muscle spasm but did find tightness “all across the low back area.” From X-rays he found narrowing of the disc space between L-5 and S-l and prescribed intensive physical therapy and medication. By May 24 she had improved but she was then complaining of soreness in the knee. X-rays revealed a loose body in the knee and he recommended surgery to remove the loose body. In his opinion, the knee problem would cause her more difficulty with the back. The knee surgery was accomplished on July 7 and she was discharged on crutches from the hospital on July 16.
Plaintiff continued under Dr. Soboloff’s care until April 1,1977, and throughout this period of time his treatment was directed to the knee and not the back. On August 13 she was fitted with a brace and on August 27 she got off the crutches and began to use a cane. Her range of motion increased and by September 17 she could walk without the cane. Over the next few months she gradually improved with a program of exercise, heat therapy and use of the brace. By February, 1977, Dr. Soboloff found no swelling and a full range of motion and he felt that she could return to work as a bus driver, although “she had a ten per cent loss of function, on a permanent partial basis, of the right knee as a result of the injury and the surgery.” Based on his final examination of plaintiff on April 1,1977, he believed she could drive buses because he understood that they were equipped with power steering and power brakes.[1]
Asked what would cause such a knee problem Dr. Soboloff testified: “It could either be developmental, something that she had in her growth development stages. Usually in their teens we see them occur, and occasionally before that. Or, it can be as a result of trauma.” He explained that when he first saw plaintiff she didn’t complain about her knee because her back was so stiff but as the back improved she noted more pain in the knee. In the history she gave she did not mention any trauma to the knee.
In March, 1977, plaintiff was referred to Dr. James Williams for examination at the request of the Social Security Administration. X-ray photographs revealed that the disc space had narrowed between L-5 and S-l, and he felt that this explained her complaints of pain. He felt that she would probably benefit from a lumbar spine fusion. In his opinion the complaints were caused by the accident and he felt that plaintiff was disabled from performing the duties of operating a bus because she would suffer a significant degree of pain from remaining in a seated position and the jarring motion of the bus.
Plaintiff was examined by Dr. Bernard Manale, an orthopedic surgeon, on November 2,1977, one month before the trial. He stated that she had residual symptoms and objective evidence of nerve root impairment, and that she should not operate a bus since it would require long sitting.
The evidence of residual disability in plaintiff’s back is not seriously contradicted by defendant. Dr. Applebaum would not state that plaintiff was not disabled from an orthopedic point of view and consequently in no way contradicted the testimony of the two orthopedists whom plaintiff produced. Furthermore, Dr. Soboloff, who was not primarily concerned with her back problems, indicated in response to hypothetical questions put to him by plaintiff’s counsel that a person with a history of laminectomy *1357 and discotomy would be prevented by pain from sitting over a long period of time and this would be particularly true if plaintiff, while operating a bus, is required to bend her back while in the process of turning the bus.
In his reasons for judgment the trial judge apparently held that plaintiff was disabled as a result of her back injury, but concluded that there was no causal connection shown between the accident and the knee injury based on the lapse of time between the accident and her complaints about the knee. He apparently rejected the testimony of plaintiff that she struck her knee on the fare box when the seat collapsed. It seems to be conceded by both parties that the knee injury is not the com-pensable injury, and the question before us is if the trial judge was correct in finding plaintiff permanently and totally disabled as a result of the back injury alone.
On this issue, the trial judge stated that he was impressed with plaintiff’s good work record prior to the accident and her willingness to submit to repeated medical procedures during the course of her treatment. He felt that she “presents a sincere position to me, and that the symptoms she now complains of are real . . . ” He found that she was at a disadvantage to compete for a job as a bus driver because she would require a job especially tailored for her especially considering her size, her status as a female and her history of multiple injuries. He further noted that her physical limitations resulting from her accident would create safety problems for the occupants of the bus and she would be required to work with pain.
These facts are supported by the evidence in the record and the legal conclusion that she is entitled to total and permanent disability benefits is supported most recently by Cousins v. Lummus Company, et al., 364 So.2d 993 (La.1978). There plaintiff was held entitled to such benefits because his work caused disability and incapacity to perform some of the substantial duties of his employment placed him at a disadvantage in the labor market. Of course that case, like the instant case, was decided under the then applicable compensation statute. See also, Futrell v. Hartford Accident & Indemnity Company, 276 So.2d 271 (La.1973).
The issue of penalties and attorney’s fees was characterized by the trial judge as “a close question.” In his reasons, the trial judge seemed preoccupied with the knee injury as he decided the question of penalties and attorney’s fees. He was apparently convinced that had plaintiff proved causation between the knee injury and the accident defendant would have been liable for penalties if the amount due her for the partial disability resulting from the knee would have exceeded the amount of full compensation she had received until March 24, 1977, when payments were terminated. But having found that the knee injury was not compensable he concluded that she was not entitled to penalties.
On appeal, plaintiff contends that the failure of defendant to pay compensation for the back injury was arbitrary and unreasonable and subjects them to the penalties and attorney’s fees.
In Tyler v. Owens Illinois, Inc., 289 So.2d 893 (La.App. 4th Cir. 1974) we held that penalties and attorney’s fees cannot be imposed where the defendant reasonably relied on the report of the treating physician who was of the opinion that plaintiff could return to work. In the instant case plaintiff was paid compensation benefits until March 24, 1977. Defendant had received a report from Dr. Applebaum to the effect that plaintiff could return to her usual and customary occupation. That opinion was qualified in two respects; 1) that it was given from a “neurological point of view” and 2) that plaintiff did have a five to ten per cent partial permanent anatomical as opposed to functional disability. This opinion was supplemented by that of the orthopedist, Dr. Soboloff, on February 4, 1977, in which he stated that plaintiff was capable of returning to her regular work status. In that report to defendant Dr. Soboloff devoted his exclusive attention to plaintiff’s knee problem and made no mention of her back problem. In this court plaintiff makes *1358 much of Dr. Applebaum’s rating of an anatomical disability, but we understand this to mean and the doctor so testified that an anatomical disability automatically results when a part of the patient’s body has been removed as in a laminectomy. It is in no way intended to mean a functional disability-
Plaintiff relies heavily on a report to defendant by Dr. Applebaum dated September, 1977, of a neurosurgical examination just conducted on plaintiff. He stated that there was no evidence of disease or damage involving the brain, spinal cord or nerve roots, and no need for further neuro-surgical procedures, but he concluded his report with the sentence: “Should her back pain persist, orthopedic re-evaluation would be indicated.”
By this time the instant suit had been filed on July 5, 1977. At the time compensation benefits were terminated in March and the suit was filed two months later, defendant did not have the benefit of any suggestion from Dr. Applebaum that the disability might be diagnosed by an orthopedist. The report by Dr. Williams was not available to defendant and came to light for the first time at the trial. Dr. Manale, the other orthopedist, did not examine plaintiff until shortly before trial. Thus, the ultimate determination of plaintiff’s back disability rested on the reports of the last mentioned two physicians which did not become available until the actual trial of the case. These circumstances do not support plaintiff’s argument that defendant’s conduct was arbitrary and unreasonable. See Broussard v. Subsurface Completion Serv., Inc., 338 So.2d 1217 (La.App. 3rd Cir. 1976).
Finally, the question of liability for penalties and attorney’s fees is a mixed one of law and fact and we are not persuaded that the evidence is such as to justify reversal of the decision of the trial court in this case that defendant was not arbitrary and unreasonable when compensation payments to plaintiff were terminated.
The judgment appealed from is affirmed.
AFFIRMED.

. This testimony should be considered in the light of the testimony by plaintiff and another female bus driver she produced to the effect that the brake system on the bus does not operate with the same facility as power brakes on an automobile but requires some physical pumping of the brakes for activation.