SCHOTT, Judge.
This is a claim for workmen’s compensation benefits based on an injury plaintiff alleges she sustained on September 9, 1976, while on the job as a bus driver. In dismissing her claim the trial judge gave the following reasons:
“The Court was not impressed with the testimony of the claimant. Further, the Court is of the opinion that claimant’s present condition is not due to any incident connected with her employment with the New Orleans Public Service, Inc.”
The issue on appeal is whether these findings are clearly erroneous so as to warrant a reversal.
Plaintiff testified: As she began her shift on the afternoon of the day of the accident she had to raise the seat of the bus to its highest position by straddling the seat, releasing two latches under it and pulling it up. When she sat down the seat fell a distance of about eleven inches. She first felt numbness in her back, and after driving for about an hour felt pain. She called her dispatcher and got permission to return the bus to the station where she reported the injury. She was taken to the hospital by a supervisor for treatment, was given medication and told to get bed rest, and was scheduled to see defendant’s physician on the following day.
Defendant called one of its mechanics who, on the day of plaintiff’s accident and as a result of her report, examined the seat of the bus. He testified that he found nothing wrong with the seat and that the maintenance records on the bus showed no defect in the seat from April 4, 1976, to April 20, 1977.
Defendant also offered the testimony of its equipment engineer who explained the composition and the operation of the bus seats. They are padded with three or four inches of foam rubber over a spring cushion and are adjustable in three vertical positions. When the seat is raised just beyond its highest position the latch releases the seat and it goes down. However, it will stop at the next intermediate position between the top and the bottom and cannot drop more than three inches as opposed to the full vertical distance on the shaft of sixteen inches, or the eleven inches as testified by plaintiff.
*DLIII Plaintiff offered the testimony of Hazel L. McMiller, another bus driver employed by defendant, who stated that she too had an accident where the seat of the bus fell in the same manner as plaintiff’s and caused her to sustain a back injury. She stated that she too had a workmen’s compensation claim against defendant in connection with this incident.[1]
We recognize that the trial judge was in the best position to assess plaintiff’s credibility but we have concluded that he was manifestly erroneous in dismissing plaintiff’s suit considering the circumstances and the overwhelming documentary evidence supporting plaintiff’s position. Plaintiff’s supervisor did not testify, but the testimony of the mechanic who inspected the bus on the day of plaintiff’s accident does corroborate that she made a report of the accident. Among the exhibits is the original occupational injury report made by plaintiff on September 9, in which she states:
“I was trying to adjust my bus seat and when I sat on it the seat went all the way down. After driving for about one hour, I had pains in the lower part of my back and could not operate the bus any longer.”
Defendant’s clerk who took this report from plaintiff gave this description:
“1038 Langley came into the station and alleged she was trying to adjust the operator’s seat and she then sat in it and it went all the way down to the bottom with her causing pains in the lower part of her back.
1038 Langley is to report to Dr. Peterson (NOPSI Medical Dept.) 9/10/76. Then back to Canal Station for assignment.”
A physician’s report on defendant’s form to its claim department, dated September 10, by Dr. C. W. Peterson summarizes plaintiff’s statement as to how the accident occurred as “Adjusting driver’s seat, seat went all the way down, causing pain in lower back.”
Prom the report of Dr. Peterson and the other physicians who treated plaintiff, it is clear that she sustained an injury to her back. The trial judge did not reach the question of the severity of plaintiff’s injury since he found that the injury was simply not work related in the first instance. The only way we can agree with the trial judge is to surmise that plaintiff must have injured her back before she reported for work and then manufactured the seat incident as well as the report of the injury and the visits to Dr. Peterson in order to connect her back injury to her work. Aside from being highly improbable that plaintiff could have concocted such a fraud the judgment of the trial court does not seem consistent with the standards of proof required of a plaintiff in a workmen’s compensation case. Defendant produced no evidence or even a suggestion that plaintiff had another accident. It was faced with a routine employee’s complaint that she was hurt on the job and sent that employee to its physician for medical care who, in turn, found that plaintiff was in fact injured. The number of judgments in favor of workmen for workmen’s compensation benefits based on their own uncorroborated report of a job related injury are too numerous to require citation. In this case, we have the testimony of the plaintiff, the circumstances that she made ah immediate report of the accident and the absence of any evidence whatsoever to explain her injury other than as one work related. We have concluded that she did suffer a compensable accident and is entitled to recovery.
Dr. Peterson diagnosed a lumbosacral strain of plaintiff’s back following his examination on September 10. He recommended modified duty with no lifting or straining and her return to the medical department on September 15. She was treated for the lumbosacral strain on September 16 and 24 and October 7 by her doctor, Míneles, who in turn referred her to Drs. Grimm and Schiavi for further treatment. They hospitalized plaintiff and referred her to a neurological surgeon, Dr. Culicchia, who first examined plaintiff on October 9 at the West Jefferson hospital. *DLIV Once again she gave to him the same consistent history of the accident starting with the failure of the seat and the onset of pain about two hours later. He initially placed plaintiff at bed rest and in pelvic traction but when she failed to respond a lumbar myelogram was performed on October 14. This revealed a defect in the L5-S1 disc, and on October 19 a bilateral partial lumbar hemilaminectomy was performed with the removal of a ruptured lumbar interverte-bral disc on the right side and the removal of a degenerated lumbar intervertebral disc on the left side. She continued under Dr. Culicchia’s care until July 22, 1977, when he felt that she could engage in full activity without restrictions. He concluded that she had no functional neurologic disability and had a 10% partial permanent disability of the body as a whole.
Two other physicians examined plaintiff, Dr. Redler for defendant, and Dr. Marrero for plaintiff, both orthopedic surgeons. Dr. Redler, who saw plaintiff on November 29, 1977, testified that she did have some residual disability as a result of the laminecto-my. He felt that some further degeneration of the disc might have taken place but was unable to express a definite opinion because the X-ray photographs taken by plaintiff had not been made available to him. Dr. Marrero saw plaintiff on January 9, 1978, and was of the opinion that she had nerve root involvement as a residual of her injury. He scheduled plaintiff for surgery in February but because of some blood condition the surgery was cancelled. He stated she may have problems in the future with the disc but he would not operate on her apparently because of her blood condition. He estimated that plaintiff was 30% disabled as a result of the accident, and even with the operation which he had contemplated she would still be 20 to 25% disabled.
We have concluded that plaintiff is entitled to compensation benefits for the period from September 9, 1976, until July 22, 1977, when she was discharged by Dr. Culicchia. We are not inclined to extend her benefit period considering Dr. Culicchia’s positive opinion as to her ability to work and despite the opinion of Dr. Marrero who didn’t even see plaintiff until six months after she was discharged by Dr. Culicchia. LSA R.S. 23:1221(1) provides for recovery of 66%% of plaintiff’s wages for an injury producing temporary total disability for the period of time in which she was disabled.
Accordingly, the judgment appealed from is reversed and set aside, and there is judgment in favor of plaintiff and against defendant decreeing that she is entitled to disability benefits under the Workmen’s Compensation Law for temporary total disability for the period between September 9, 1976, and July 22, 1977, with legal interest on these amounts from the date on which each payment became due and for all costs of these proceedings.
REVERSED AND RENDERED.

. See McMiller v. N.O.P.S.I., 367 So.2d 1354 (La.App. 4th Cir. 1979).